McLendon *vs.* Wilson, Callaway & Company.

house, pulled out of his right breeches pocket a pistol, pointed it at Davis, and said to him, "G—d d—n you, if you don't leave I will shoot your liver pin out." The defendant had been often seen with the pistol. He habitually carried it in his breeches' pocket. The pistol had but one barrel, and was about nine inches long.

One witness testified that he supposed he could have seen the pistol had he looked at defendant's pocket before it was drawn. The first he saw of it was when defendant was brandishing it at Sol. Davis. The other witness stated that he could not tell whether he could have seen the pistol or not by looking at defendant's pocket before it was drawn. He first saw it when the defendant was in the act of taking it from his pocket.

The defendant introduced no testimony.

The jury found the defendant guilty. He moved for a new trial, because the verdict was contrary to the law and the evidence. The motion was overruled, and he excepted.

T. R. LYON; J. H. SPENCE, for plaintiff in error.

B. B. BOWER, Solicitor General, for the State.

---

JESSE McLENDON, plaintiff in error, *vs.* WILSON, CALLAWAY & COMPANY, defendants in error.

1. A settlement of accounts between a factor and his principal, the principal giving his promissory notes for the amount of the factor's demand, but at the time protesting against its fairness, is not an estoppel upon the principal who gives the notes. The fairness or legality of the account is still open to inquiry, even though no fraud or mistake, or

ignorance of fact, is shown. But the burden of proof is upon the principal. The transaction is an accord only, and not satisfaction.

2. A factor had advanced money to A to purchase cotton, to be sold by the factor upon A's account, and for his own remuneration for his advances. A purchased and shipped during the same season various lots, accompanying the first with an order to sell on arrival. The factor failed to sell as directed, but wrote to A advising against a sale, asking his further direction, and stating that he would hold for a better market unless A should direct otherwise. As other lots came forward, letters of a similar character were sent by the factor to A, all of which A failed to answer. The cotton remained unsold, the market continuing to decline, until at length, in reply to a letter insisting on instructions, A wrote, insisting on his original order with the first shipment, and repudiating all authority for any delay. The factor still held the cotton for some time, even after this letter, and the same was at last sold at great loss:

*Held*, that it was the duty of A to answer the letters if he did not consent to the acts and intent of the factor as therein expressed, and that he cannot complain of the holding of the cotton except so far as it was held after he had notified the factor of his dissent from his action.

3. Where the answer to a cross-interrogatory is sufficiently full when taken in connection with the answers to other questions, the deposition should not be excluded, especially when the record does not disclose when the exception was taken, and whether or not it was in writing.

4. Where an order adjourning the hearing of a motion for a new trial to vacation is taken, and the motion is heard and decided in accordance therewith, such order is a necessary part of the record. That it is set forth in the bill of exceptions is not a sufficient reply to a motion to dismiss the writ of error because the certificate of the Judge is dated more than thirty days after the adjournment of the court at which the trial was had. (See end of Report. R.)

5. A suggestion of a diminution of the record will be allowed after a motion to dismiss the writ of error upon a ground which turns upon the defect thus sought to be cured. (See end of Report. R.)

Settlement. Promissory notes. Factors. Interrogatories. New trial. Practice in the Supreme Court. Before Judge BUCHANAN. Troup Superior Court. November Term, 1872.

The only ground of the motion for new trial necessary to be reported is the first, which was because the court erred in refusing to reject the deposition of R. T. Wilson, for the reason that the answer to the thirteenth cross-interrogatory was evasive and incomplete.

The question and answer referred to were as follows:

"Please state if the understanding was not that statements or explanations should be submitted subsequent to the date of these drafts? Do you not know that a promise was made by letter to that effect?"

Answer. "At the time of our interview spoken of with Mr. McLendon, there was no understanding that statements or explanations respecting them should be submitted at a subsequent time. My impression was that the drafts were antedated to conform to accounts in which interest was computed to 31st August; that the interview at which the settlement was made and the signing and delivery of the drafts, took place some time in September, the exact date of which I can not recall. I do not know that a promise was made by letter to the effect, as stated in the thirteenth cross-interrogatory."

It appeared from the other answers of this witness that he was a member of the firm of Wilson, Callaway & Company, the plaintiffs, and that they had had but one interview with the defendant. The record does not disclose when this exception was taken, nor whether in writing.

After this case was called, and as counsel for plaintiff in error was about to commence the reading of the bill of exceptions, counsel for defendants submitted in writing a motion to dismiss the writ of error, because the bill of exceptions was not signed and certified within thirty days from the adjournment of the court at which the trial was had.

The record simply disclosed the declaration, pleas, verdict and judgment. The trial was had at the November term, 1872. The clerk, in his certificate to the bill of exceptions and to the record, stated that said term adjourned on December 14th, 1872. The certificate of the judge to the bill of exceptions was dated March 5th, 1873.

It was replied by counsel for plaintiff in error that the bill of exceptions disclosed that the motion for a new trial was presented during the November term, 1872, and that the hearing thereon was postponed by order of court until a day, thereafter to be appointed by the presiding judge, in vacation;

that in accordance with said order said motion was heard and overruled on the 8th of February, 1873; and that, as the bill of exceptions was signed and certified within thirty days of the date last aforesaid, the motion should not be allowed.

This was admitted by counsel for defendants, but they contended that the aforesaid order adjourning the hearing of the motion to vacation must be shown by the record, and not by the bill of exceptions.

Upon an intimation from the court that this position would be sustained, counsel for plaintiff in error suggested a dimunition of the record. It was replied that they were too late, as by rule nine of the supreme court that suggestion must be made "on or before the calling of the case."

The court stated that it would allow the suggestion to be then made, enunciating the principle embraced in the fifth head-note. The part of the record contained in the bill of exceptions was then admitted by counsel for defendants to be true, and the case proceeded.

For the remaining facts, see the opinions.

B. H. HILL & SON; BIGHAM & WHITAKER, for plaintiff in error.

FERRELL, HAMMOND & BROTHER, for defendants.

WARNER, Chief Justice.

This was an action brought by the plaintiffs against the defendant on two drafts dated 31st August, 1867, for $3,819 24 each, one due ninety days and the other sixty days after date, drawn by the defendant on the plaintiffs, payable to their order, acceptance waived. · To this action the defendant pleaded that said drafts were without consideration, in this, that he had purchased cotton and shipped the same to plaintiffs as commission merchants in New York; that by improper and exorbitant charges, and in failing to sell his cotton according to instructions and usage, as it was their duty to have done, they had damaged him to a larger amount than the drafts now

sued on. On the trial of the case the jury, under the charge of the court, found a verdict in favor of the plaintiffs. The defendant made a motion for a new trial, on the several grounds set forth therein, which was overruled by the court, and the defendant excepted.

1. There is much evidence in the record containing an account of the dealings and transactions between the parties in relation to the shipment and sales of cotton at different times, including letters written by the respective parties to each other. When the drafts were executed by the defendant two of the plaintiffs were present, and exhibited to the defendant their account containing a detailed statement of all their transactions with him in relation to the shipments of cotton, and the sale thereof, of which the defendant had made complaint. The drafts were executed by the defendant to the plaintiffs for the amount of the account claimed to be due them after he had examined the same, though he said to them at the time it was not right, as he states in his evidence. The evidence of the defendant in relation to this point in the case is, that he did not acknowledge the amount to be correct. Mr. Orme, (one of the partners) said he was the Georgia member of the firm, and had been the medium of getting up and conducting the business, and that he felt himself under censure by his partners; that he and defendant were old friends, and he had represented him as every way a suitable man to deal with, and it would be a relief to him for defendant to sign the drafts—defendant still contending the amount was unjust. Mr. Orme said if there was anything wrong about the accounts it should be corrected; defendant then said he would sign the drafts, and told Wilson, the other partner, he would sign them, and did so. Orme and Wilson were examined as witnesses at the trial. Orme stated that he did not recollect saying to defendant that if there was anything wrong plaintiffs would correct it, did not think he said that, for he thought it was a final settlement; did not tell defendant until *after* he said he would sign the drafts about his embarassment as the Georgia partner, and was glad that he would sign them. Wilson stated

that the drafts were given by defendant in final and complete settlement of the account, and without any understanding that . anything more was to be done in respect to the settlement thereof. The court charged the jury, amongst other things, "that if you believe from the evidence, defendant, with a full previous knowledge of all the material facts of the sale of the cotton and the charges of the plaintiffs in connection with the cotton and advances of money made, that defendant knew the times of the sales of the cotton, the prices at which it was sold, and the material facts of the transactions between the plaintiffs and defendant, and defendant gave his written promise, bill of exchange, or note, to pay the claims of plaintiffs, this would be a recognition of the acts of the plaintiffs and adoption of them as his own, and makes him liable for the payment of his notes. If you believe from the evidence that the defendant, with such knowledge as I have charged you, signed and delivered the notes, then he waived any defense he might have had, if any, to the accounts exhibited by plaintiffs to defendant." This charge of the court, in view of the defendant's evidence, was error, because it did not fairly submit that evidence to the consideration of the jury. The point in the case, as made by the defendant's evidence, was whether at the time the drafts were signed by him in liquidation of the accounts which he claimed to be erroneous, it was the intention and understanding of the parties that if there was anything wrong about the accounts it should be *thereafter* corrected,.and in what particular the same should be corrected. The general rule of the law, as applicable to the facts of this case, undoubtedly is, that if the defendant signed the drafts with a full knowledge of the state of the accounts, and in liquidation or settlement of the same (in the absence of any fraud, accident or mistake) he is *prima facie* bound thereby for the payment of the money expressed therein, and if there is any fact or facts going to show that it was not the intention of the parties that the drafts should be a full and final settlement and compromise of the subject matter of the accounts for which the drafts were given, the burden of proof to show such fact

McLendon *vs.* Wilson, Callaway & Company.

or facts is upon the defendant, and he should rebut the presumption of the law against him by clear and satisfactory evidence. Whether the evidence offered by the defendant at the trial was sufficient for that purpose or not, we express no opinion. In relation to that point in the case the evidence was conflicting. All that we do decide is, that the court erred in its charge in saying to the jury that: "If you believe from the evidence that the defendant, with such knowledge as I have charged you, signed and delivered the notes, then he *waived* any defense he might have had, if any, to the accounts exhibited by the plaintiffs to defendant." This charge of the court excluded from the consideration of the jury the defendant's evidence as to what he says was the intention and understanding of the parties at the time the drafts were executed. This evidence being before the jury, the defendant had the right to have had it considered by them for what it was worth in contradiction of the plaintiff's evidence as to that question in the case. The issue made by the defendant was whether the giving of the two drafts was a final settlement and compromise between the parties as to the subject matter of the plaintiff's accounts. It is not stated in the drafts that the same were given for that purpose, or for what purpose the same were given, therefore the defendant's evidence did not contradict the drafts.

2. But it is contended that notwithstanding the court may have erred in its charge to the jury, still the evidence in the record is such as to have *required* the jury to have found the verdict they did. That depends altogether upon the question whether the defendant had (independently of giving the drafts sued on) ratified the conduct of the plaintiffs as his factors in making sale of *all* the cotton shipped to them. The first shipment of cotton, seven bales, was made by defendant to plaintiffs, 27th October, 1866, with instructions to sell on arrival. This lot of cotton was not sold until 28th January, 1867. On the 16th November, 1866, plaintiffs wrote defendant asking him "shall we sell your cotton on this market, or will you prefer that we hold it for a better market? If you

want your order to sell on arrival to remain in force, telegraph us. If you don't telegraph us we will hold till we hear from you by letter." The defendant made no reply to this letter. The defendant shipped other lots of cotton to plaintiffs afterwards, but gave no instructions as to time of sale. The plaintiffs held the cotton after arrival in New York, the market declining, whereby the defendant lost money on it, and the question is, whether the defendant is to be considered as having ratified the conduct of the plaintiffs in holding and selling his cotton at a loss, other than the seven bales, without instructions. According to the ruling of the court in Field *vs.* Farrington, 10 Wallace Reports, 141, the defendant, when informed by letter that the plaintiffs had not obeyed his instructions in selling the seven bales on arrival, and being requested to telegraph them in relation thereto, and informing him that if he did not telegraph or write to them they would hold his cotton, the failure of the defendant to reply will be construed as an approval of their conduct in disobeying his instructions as to the sale of the seven bales of cotton on its arrival, and holding the same, as they informed him they should do. But the balance of the cotton shipped by the defendant to the plaintiffs without any instructions as to the time of sale stands upon a different footing. The *silence* of the defendant as to the time of sale of the balance of the cotton shipped by him to the plaintiffs without any instructions, cannot relieve them from the performance of their duty to him as factors in the sale of his cotton, as regulated by law and the usage and custom of the trade. If, without instructions, they took upon themselves the responsibility of holding the defendant's cotton after its arrival, on a declining market for an unreasonable time, and loss resulted in consequence thereof, they are responsible for such loss. The silence of the defendant in relation to the violation of his orders as to the sale of the seven bales on arrival cannot be considered as anything more than a ratification and condonation of their past neglect and conduct as to that particular lot of cotton, and not as a permission given to them by him for any future neglect

McLendon *vs.* Wilson, Callaway & Company.

of duty as his factors in making sale of the other lots of cotton subsequently consigned to them without any instructions as to the time of sale. The question therefore still remains, whether the giving of the two drafts by the defendant with a full knowledge of all the facts, was intended by the parties to be a full and *final* settlement of the plaintiff's account. The evidence was conflicting as to that point in the case, and the jury should have been allowed to consider the evidence offered by the defendant as well as that offered by the plaintiffs.

3. There was no error in overruling the motion to reject the answers of Wilson because the thirteenth cross-interrogatory was not substantially answered.

In view of the charge of the court to the jury excluding the consideration of the defendant's evidence in relation to what was the intention of the parties as to a full and final settlement of the plaintiff's account at the time the drafts were executed, the judgment of the court below should be reversed and anew trial granted.

Judgment reversed.

McCay, Judge, concurred, as set forth in the two first headnotes. He furnished no other opinion.

Trippe, Judge, concurred as follows:

1. I concur with doubts in the judgment that the court below erred in charging that if McLendon, when he signed the drafts, knew of the sales of the cotton, and the times of the sales, then his signing the drafts with that knowledge was a recognition and adoption of the acts of plaintiffs, and he was liable for the payment of the drafts, and that if, with such knowledge, he signed and delivered the drafts, he thereby waived all defense he might have had, if any, to the accounts exhibited. Of course these doubts do not extend to the right of McLendon to claim a correction of any mistakes or errors in the charges; but of them there was no proof.

2. The effect of the refusal of McLendon to reply to the letters received from plaintiffs was to raise a presumption that

he approved of what his factors had done and of what they proposed to do, so far as he was informed, and in the absence of anything to rebut such presumption, he is to be considered as having consented to the delay that had occurred in making sales. But such presumption extends not beyond his notice to them of his disapproval of their not having sold at earlier dates, and for a reasonable time after such notice. Any charges or losses by decline of prices after such reasonable time, should not be charged against him.