### 3223.   NATIONAL DUCK MILLS *et al. v.* CATLIN & CO.

1. Where both a general and a special demurrer are filed to an answer and the trial judge dismisses it on general demurrer, the reviewing court, if it finds that the answer sets up any valid defense, though imperfectly pleaded, will reverse the judgment with direction that the trial judge shall hear the special demurrer and cause the answer to be made more certain.

2. Though the parties may have made what appears to be an entire contract, resting on mutual obligations, still if the contract is of such a nature as to give rise to separate and distinct demands or to create a number of separate obligations and cross-obligations, and a number of distinct breaches as to these separate obligations occur, the parties may make an accord and satisfaction, or what in law amounts to an accord and satisfaction, as to one or more of these demands, without affecting the others.

3. Where the defendant in a suit upon a promissory note pleads that the note was given for advances which the plaintiff was to make to him under the terms of a contract, and that, by reason of the plaintiff's refusal to continue to make advances in accordance with the terms of the contract, the defendant has suffered damage, the amount of which he seeks to set-off or recoup against the plaintiff's demand, the plea is properly stricken on general demurrer, where it also appears from it that all the items of damage which the defendant claims on this account were in existence and were known to him at the time he executed the note (in renewal of a previous existing note representing the same debt) and obtained an extension of time.

4. A plea setting up as a cross-action that the plaintiff, being purchasing agent for the defendant, bought for him under contract a quantity of goods containing concealed imperfections, which caused the defendant loss and damage, is properly stricken on general demurrer, where no act of infidelity or negligence on the plaintiff's part (that is, no breach of the contract of agency) is alleged.

5. The pleas in the present case, so far as they set up neglect and breach of duty on the plaintiffs' part as sales agents of the defendants, were, in a number of respects, subject to special demurrer, on account of indefiniteness of allegation, but were not subject to be stricken on general demurrer.

DECIDED JANUARY 15, 1912.

Complaint; from city court of Atlanta—Judge Reid.  October 21, 1910.

HILL, C. J., being disqualified, Judge Park, of the Albany circuit, was designated to preside.

Catlin & Company sued the National Duck Mills, a corporation, as maker, and certain others as indorsers, upon a promissory note for $12,000, dated October 14, 1909, and due six months after date.  The defendants admitted the execution of the note, but set up, for defense, that on August 12, 1907, the defendant corporation entered into a contract with the plaintiffs, by which it employed them as exclusive sales agents for the product of its mills, as well as purchasing agents to buy yarns for use therein; that by the terms of the contract of agency, the plaintiffs were to sell the entire output of the mills and to give, in this particular, faithful and competent service, for a commission of 5 per cent., to include all their expenses, and were also, from time to time, to make advances of money to the defendant, charging interest therefor at the rate of 6 per cent. per annum; that this contract was extended and renewed in January, 1908, so as to expire on January 1, 1909, and was again renewed for the year 1909, and that on June 2, 1909, it was broken and repudiated by the plaintiffs; that on faith of the contract the defendant began operation of its mills and was engaged in manufacturing duck, etc., had purchased the necessary yarns, and was carrying on its business generally, expecting the plaintiffs to carry out their contract; that in the course of the relations between these parties, the defendant became indebted to the plaintiffs in the sum of $15,000 for advances, for which it executed a promissory note, and that the note for $12,000, sued on, was given on October 14, 1910, in renewal of the balance due for advances; that by reason of the fact that on June 2, 1909, the plaintiffs renounced the contract and refused to advance any further money, the defendant had been damaged in the sum of $35,000. The plea set forth with more or less detail a number of different ways in which damage ensued by reason of the plaintiffs' failure to

16

furnish the necessary money to carry on the business; all of which damage had ensued before the date when the note sued on was given. It was also pleaded that the plaintiffs, as agents for the defendant, purchased for its mills a quantity of yarn containing certain imperfections known as "slip knots," which caused the product manufactured from it to be rejected by the purchasers, to the defendant's loss in the sum of $1,800; also that the plaintiffs, as sales agents for the mills, negligently instructed the mills to make up goods 'for orders which in one case were not promptly forwarded, and in the other case not forwarded at all, so that in both cases, by a drop in the market, which came before the goods so ordered made up could be disposed of, the mills lost certain amounts of money, which are set forth. Certain other transactions which need not be enumerated are set forth, and damages are alleged.

For the purpose of a better understanding of the following opinion, it may be stated that the defenses are of three classes: (1) pleas setting up damages because of the plaintiffs' failure to make advances; (2) a plea setting up damages because of imperfections in a lot of yarn purchased for the mills by the plaintiffs as purchasing agents; (3) pleas setting up damages because of negligence on the plaintiffs' part in their conduct as sales agents of the mills. The major portion of the damages is asserted under the pleas setting up damages for failure to continue the advances. The plaintiffs filed both general and special demurrers to these pleas. The court did not pass upon the special demurrer, but passed an order sustaining the general demurrer to the entire defense, probably for the reason insisted upon by counsel for the plaintiffs in error in this court, that the giving of the note sued on, after all these classes of defenses set up in the answer had arisen, prevented their being pleaded in set-off or recoupment, or otherwise, against the note.

*Anderson, Felder, Rountree & Wilson,* for plaintiffs in error.

*Shepard Bryan, W. R. Tichenor,* contra.

PARK, J. 1. The trial judge must be sustained, if at all, upon the theory that the defenses set up were not good as against a general demurrer. He did not pass on any special demurrer, and the reviewing court is not even informed as to the nature of the special demurrers interposed. It has no jurisdiction to attempt to review a judgment not rendered by the trial court; so, if the general demur-

rer was improperly sustained, the case should be remanded to the trial court, with direction that the trial court do hereafter pass upon the special demurrers, whatever they may be. Any other course would be eminently unfair to the defendants; for upon announcement by the trial judge that one or more of the special demurrers would be sustained, the defendants would have opportunity, as a matter of right, to amend. A reviewing court can not properly undertake to cut off this statutory right of amendment, by erroneously undertaking to uphold a judgment sustaining a general demurrer, upon the theory that the defendants' pleas might properly have been stricken upon timely and meritorious special demurrer. The defendants' pleadings were unquestionably open to special demurrer, on various grounds, but the reviewing court can not arbitrarily assume that the proper objections were raised by the special demurrers actually filed.

2. As this court is about to hold that certain of the pleas were properly stricken on general demurrer and that certain of them were not, it is well enough for us to point out in the beginning why the defendants would be estopped by their conduct in giving the note from setting up some of these defenses, and are not stopped from setting up others. The plaintiffs say that the contract sued on was entire and not severable, and that whenever accord and satisfaction, or what in law amounts to accord and satisfaction, took place as to the matter covered by the notes, which represented a part of the contract, the whole matter was settled and ended. In the first place it should be noticed that the plaintiffs do not sue upon the contract, but merely sue upon the note which the demurrer to the plea admits to have represented the defendants' liability under only one phase of the contract,—that is, the defendants' liability to the plaintiffs for advances. By a close examination of the case of *Armour* v. *Ross,* 110 *Ga.* 403 (35 S. E. 787), it will be seen that the Supreme Court has recognized and held that there may be separable demands under a single entire contract, and that where, under such a contract, there is more than one distinct demand, an accord and satisfaction as to one of them will not conclude the rights of the parties as to the other demands. In that case, as in this, there was a single contract, but a number of obligations; the parties made an accord and satisfaction as to one of them, and, though receipt in full was given, it was held that this did not settle the cause of action arising from a

breach of another obligation, although the breach had been consummated at the time the first settlement took place. The contract now before us involved, from the defendants' standpoint, three demands against the plaintiffs: (1) as to the plaintiffs' duty to advance money; (2) as to the plaintiffs' duty as sales agents; (3) as to the plaintiffs' duty as purchasing agents. The note sued on referred to that phase of the contract which relates to the advancing of money, and not to the other two. Under the *Armour* case, supra, the rights of the parties under these separate obligations may be treated as if each obligation constituted a distinct contract.

3. The contract set up in the answer is, certainly as to the obligation to make advances, an entire and not a severable contract, embracing mutual covenants. *Broxton* v. *Nelson,* 103 *Ga.* 330 (30 S. E. 38, 68 Am. St. R. 97); *Spalding* v. *Chamberlain,* 130 *Ga.* 654 (61 S. E. 533). And all the items of damages claimed by the defendants in paragraphs 10 and 11 of the answer grew out of breaches committed from time to time by the plaintiffs of their covenants under this very contract. It follows that these items of damages are not separable from the liability for money advanced to the defendants under the terms of the contract—both claims having arisen out of the transaction had under the same feature of the contract. The defendants' defense as to these items is one of recoupment, and not set-off. So, had they been sued on the notes falling due in October, 1909, they would have been compelled to urge their claims for these damages in defense to the suit, or have been forever barred from insisting thereon. Unlike a plea of set-off (which it is the privilege, but not the bounden duty, of a defendant to interpose to a suit based on an independent transaction), the defense of recoupment will not survive a recovery upon a cross-obligation urged by a plaintiff under the same transaction. Analogous to this estoppel by judgment (imposed upon a defendant who fails to file a timely plea of recoupment) is the rule of estoppel by silence, applied in cases cited by the defendants in error, where one party to a contract, when the day has come on which the other party can call him to a settlement, fails to set up any counterclaim under the contract, and (in order to get an extension of time of payment) makes an unqualified and unconditional promise to pay such other party the full amount of his claim. In each instance (in court or out of court) one party calls on the other for a set-

tlement, and the latter should in good faith urge then, if at all, any counter-claim which he may have, arising out of the subject-matter of settlement. Certainly he should not be allowed to mislead the other by making an unconditional promise in recognition of a liquidated liability which he then secretly intends to repudiate at a later date when he is called on to perform that promise.

There is a rule of law to the effect that one party to a contract does not, by recognizing and performing all of his obligations under the contract, waive, renounce, or injuriously affect his right to exact like compliance on the part of the other party and recover damages for a breach committed by such other party, prior or subsequent in point of time; so it would seem that the defendants might have paid off in full the notes due in October, 1909, without jeopardizing their right to bring suit against the plaintiffs subsequently and recover the damages for breaches of the contract set forth in their present pleadings. But the defendants did not pay under and in compliance with their obligations of the contract alleged. On the contrary, instead of complying with their obligation under that contract to repay the money advanced when it became due, these defendants induced the plaintiffs to agree to a renewal of that contract, and to give them six months additional time within which to pay the renewal note, without fail, when it should fall due. It is unthinkable that the plaintiffs would have consented to this novation had the defendants in good faith put the plaintiffs on notice that they denied owing the plaintiffs one cent, that they had a counter-claim of far more than the plaintiffs' claim of $12,000 for money advanced under the same contract, and that when the renewal note fell due, they would refuse its payment, force the plaintiffs to sue on the note, and then set up this defense.

At the time this renewal note was given, the defendants had full knowledge of these defenses now urged for the first time. So they are not in a position to set up any equitable prayer for relief, based on fraud, accident, or mistake, or upon excusable ignorance, at the time they gave their renewal note, or to set up any counter-claim they had against the plaintiffs as to this feature of the contract. The plaintiffs repudiated the contract on June, 2, 1909; which gave the defendants the right to treat the contract as at an end, and immediately to set up all their claims for damages up to that time sustained. *Smith* v. *Ga. Loan Co.*, 113 *Ga.* 975

(39 S. E. 410). The defendants could have elected to treat the contract as still subsisting, provided they held themselves in readiness to fully perform all of their covenants under the contract, including the payment of their outstanding notes for money advances made by the plaintiffs as these notes fell due. *Smith* v. *Ga. Loan Co.*, supra. But (perhaps from necessity, as indicated by the pleas) the defendants did not elect to treat the contract as still of force, but closed down the manufacturing business and sold out the stock on hand to whomsoever would buy. The defendants did more than this: they induced the plaintiffs to grant indulgence, upon the faith of their promise to pay the renewal note at maturity. Six months gives exceptional opportunity, by way of disposal of assets, etc., in which to better prepare to spring a defense concealed under cover of silence until the other party to the contract has changed his position so that he can not sooner bring suit.

The defendants do not by their pleadings bring themselves within the decision in *McLendon* v. *Wilson*, 52 *Ga.* 41, to the effect that when, on the day of reckoning, one party gives to the other his note, with the distinct understanding and agreement that it is accepted, not in final settlement of mutual accounts, but subject to counterclaims against the payee, which the maker expressly reserves the right to set up in the future, no waiver on the part of the maker can be implied, and no estoppel by conduct can be urged against him when he is sued on the note. This exception to the general rule certainly affords full opportunity to overcome by proper pleadings and competent proof the presumption of the law of waiver of counter-claims silently withheld and undisclosed on the day of settlement. We may further add that the general rule of estoppel by silent acquiescence, invoked by the defendants in error, has been of long standing, and has received repeated recognition from the highest courts of this State. Ignorance of this rule of law may occasionally lead one into error. But ignorance of law is, in and of itself alone, no sufficient excuse. Besides, one, to be injured, would ordinarily have to be likewise ignorant of the common dictates of honesty and fair dealing between men, which would of necessity deter the upright man from misleading the other party by an apparent acknowledgment of the righteousness of his claim, by promising to pay it at a future date, without any intimation of subsequent intention to repudiate his promise by setting up a counter-

claim amounting to a practical denial of any indebtedness whatsoever. On the other hand, a relaxation of this general rule, based on good morals, would open wide the doors to fraud, concealment, and duplicitous conduct, calculated to deceive and mislead the other party, to his delay and injury in the prosecution of his legal rights, whatever they might be. So that the court did not err in sustaining the general demurrer to those portions of the defense which set up damages arising out of the breach of the obligation to make advances.

4. Paragraphs 12 and 16 of the answer are the ones that set up that the plaintiffs, as purchasing agents, bought for the duck mills a lot of yarn containing " slip knots." It is not alleged that the plaintiffs were in any wise negligent in their conduct as agents in this respect. Primarily the defendants' cause of action for the imperfections in the yarns furnished would be against the person from whom the plaintiffs purchased the yarn. The plaintiffs were not the opposite parties to this contract of sale, nor to the express or implied warranties contained in the contract of sale. The only ground of liability against them would be that they were guilty of some breach of duty as purchasing agents; and no such neglect of duty is alleged. Therefore the court did not err in sustaining a general demurrer to these paragraphs of the answer.

5. Paragraphs 13, 14, and 15 set up a breach of the plaintiffs' duty as sales agents, and allege an improper performance of services on their part, with consequent damage. It is true that in a number of respects these paragraphs of the plea might be subject to special demurrer, but, as against a general demurrer, they set up a cause of action, or, as pleaded in the present case, a cause of defense. As the damages set up in these paragraphs do not relate to that obligation of the contract to which the plaintiffs' demand relates (that is, the demand for repayment of money supplied by them under their obligation to make advances), they were not included in the settlement represented by the giving of the note, and, under the doctrine in the *Armour* case, supra, the defendants' right to insist upon them was not foreclosed by the giving of the note. Hence, the court erred in striking these defenses on general demurrer.

The judgment is affirmed so far as it relates to the defenses set up in paragraphs 10, 11, 12, and 16 of the answer. The judgment is reversed so far as it relates to the defenses set up in paragraphs

13, 14, and 15 of the answer, but with the direction that the court shall still proceed to hear such special demurrers as may be filed to these paragraphs, or to the general portions of the answer upon which these paragraphs are dependent.

*Judgment affirmed in part, and reversed in part, with direction.*