**THIRD DIVISION**
**MILLER, P. J.,**
**RAY and BRANCH, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**March 20, 2013**

# In the Court of Appeals of Georgia

A12A1721. AMERIS BANK v. ALLIANCE INVESTMENT & MANAGEMENT COMPANY, LLC et al.

BRANCH, Judge.

In this suit on a note and accompanying guarantees, the trial court determined that the defendants had raised issues of fact about certain defenses, and it therefore allowed the case to go to trial. A jury returned an award in favor of the bank but for significantly less than the total amount due. The jury also found in favor of one defendant on his counterclaim. The bank appeals and primarily contends the trial court erred by denying its motions for directed verdict on the note and guarantees. We agree and reverse.

The appellees do not dispute the basic facts regarding the loan and the related agreements set out in the appellant's brief, many of which were stipulated at trial. In

accordance with Rule 25 (b) (1) of this Court, we therefore accept them as true and reproduce an abbreviated and edited version below.

On October 31, 2007, four companies with common ownership – Alliance Investment and Management Company, LLC ("AIMCO") and its three operating companies: Ameridoor Cabinetry Components, LLC; Classic Surrounds, LLC (collectively "Defendant Borrowers"); and Service Supply Distribution, LLC[1] (collectively "Borrowers") – signed a promissory note in the original principal amount of $5,900,000 (the "Note") with a maturity date of October 1, 2008. With authority from all of the Borrowers (as is admitted by appellees), J. Wayne Roberts signed the Note on behalf of all four LLCs. At that time, Roberts was in charge of the financial side of the businesses, and he was the official liaison between the LLCs and the bank. On the same date and again on behalf of all four Borrowers, Roberts signed a related Commercial Loan Agreement and a Security Agreement. In addition, Defendants Roberts, Monroe Hunt, Jerry Hunt, and Brad Wilson[2] ("Guarantors"), who collectively

---

[1] Service Supply filed voluntary bankruptcy on December 30, 2009, and is not a named defendant in this action.

[2] Wilson also signed the Note, Loan Agreement and Security Agreement on behalf of AIMCO.

2

own approximately 80% of the companies, each signed a separate written Guaranty of the debt as evidenced by the Note.

The Note was renewed and the maturity date extended multiple times from October 1, 2008 through March 15, 2010. But the balance due on the Note was not paid in full on or after that day, and the parties did not agree to further renew the debt. In May 2010, Ameris Bank sent and Defendants each received a written notice and demand for payment of the debt, attorney fees and interest. The parties stipulated that, as of the beginning of trial, the total amount of the indebtedness was $3,715,315.45, consisting of $2,388,000.00 in unpaid principal, $798,173.14 in accrued interest and $529,142.31 in statutory attorney fees, with interest accruing at $1,068.00 per day thereafter.

In addition to these undisputed facts and construed in favor of the verdict, the evidence shows that in late 2007 and early 2008, more than two years before the final maturity date of the loan, Roberts concluded that the long-term outlook for the Borrowers' businesses (manufacturing and providing components for the manufactured housing industry) was not good, and he conceived a plan of liquidating the Borrowers' assets to pay off the loan. But according to the Security Agreement, the Borrowers were not permitted to "sell, offer to sell, lease, or otherwise transfer or

3

encumber" any assets without "prior written permission" of Ameris Bank, and the Loan Agreement has a similar provision.

Accordingly, in June 2008, three to four months prior to the original loan maturity date and almost two years prior to the final maturity date, Roberts met with officials of Ameris Bank, including a vice-president, to propose liquidating or selling enough of the Borrowers' ongoing businesses to pay off the indebtedness to the bank. Roberts hoped "to liquidate the debt, [and] keep jobs for the [employees] by selling the companies as a whole if possible." Roberts had performed some research and concluded that he might be able to raise $6 million, which would be enough to pay the then-balance on the loan of $4.8 million, leaving $1.2 million for the companies. One bank representative who attended that meeting confirmed that Roberts "felt that at the time that he could liquidate the companies and pay the debt. And he was willing to help the Bank to do that and there would not be any type of shortfall or anything." Within the following year, Ameris Bank prepared an internal report in which it concluded that it was sufficiently collateralized to cover the loan based on "orderly liquidation margins," which a bank official explained means the collateral was sufficient to cover the debt.

Roberts expected to hear back from the bank on his proposal, and he called the bank three or four times over the next two months to follow up. The bank, however, never responded to the offer, and Roberts, in his own words, "just gave up. Gave up on asking." Yet during a deposition, an executive vice president with the bank was surprised to learn that the bank had not responded or accepted the offer; he stated, "if a proposal had been presented where we would have been paid in full, . . . I don't know why any bank would turn away a proposal to be paid in full." Despite the bank's failure to respond, as shown above the Borrowers thereafter agreed to renew the Note and extend the maturity date a number of times. These extensions of the Note were signed by Roberts, Jerry Hunt, and Monroe Hunt on behalf of all four borrowers.

Based on the bank's failure to respond to the June 2008 proposal, the Defendant Borrowers and Guarantors raised as a defense to the bank's claims under the Note and the Guarantees that the bank breached its covenant of good faith and fair dealing and that the bank failed to mitigate damages. At trial, the jury returned a verdict in favor of the Bank in the amount of $1,200,000, significantly less than the amount due, and returned a verdict in favor of Defendant Hunt on a counterclaim for invasion of privacy in the amount of $130,000. Judgment was entered in these amounts together with statutory attorney fees to the Bank.

5

1. The appellees argue that Ameris Bank failed to preserve any of its enumerated errors for appeal. The bank argues that the trial court erred (1) by denying its motion for summary judgment on the Guarantees because they are unconditional; (2) by denying its motion for summary judgment on the Note and Guarantees because the Defendant Borrowers and Guarantors failed to present evidence of a viable defense; (3) by denying its multiple motions for directed verdict for the same reasons stated in Enumeration No. 2; (4) by denying its motion for directed verdict because the defendants were estopped from raising any defenses; and (5) by denying its motion for summary judgment on Defendant's Hunt's counterclaim for invasion of privacy.

It is true that the bank asserts as error the denial of its motions for summary judgment on the Guarantees, the Note, and the counterclaim and that in general, "[a]fter verdict and judgment, it is too late to review a judgment denying a summary judgment, for that judgment becomes moot when the court reviews the evidence upon the trial of the case." (Citations and punctuation omitted.) *Kicklighter v. Woodward*, 267 Ga. 157, 162 (5) (476 SE2d 248) (1996). Accordingly, Enumerations No. 1 and 2 are moot. But the bank also moved for directed verdicts at the close of the appellees' case on the Note and the Guarantees (and later renewed those motions at the close of

6

all evidence), arguing that it had shown a prima facie case on both the Note and the Guarantees, established that the Guarantors had no viable defenses, and shown that all defendants were estopped from raising any defenses. The trial court denied the bank's motions, and the bank raised essentially the same issues in its third and fourth enumerations of error. See generally OCGA § 5-6-48 (f). Therefore, the bank did not waive the issues raised in enumerations No. 3 and 4.

With regard to Hunt's counterclaim (Enumeration No. 5), however, the bank did not move for a directed verdict, and the defendants specifically brought that point to the attention of the court. The jury considered the counterclaim and returned a verdict. Although there are exceptions to the *Kicklighter* rule of waiver set forth above, none apply here. Compare *Smith v. Saulsbury*, 286 Ga. App. 322, 323 (1) (a) (649 SE2d 344) (2007) (no waiver if "the legal issues raised and resolved in denying the motion for summary judgment were not considered at trial") (punctuation and footnote omitted). *Weir v. Kirby Const. Co.*, 213 Ga. App. 832, 836 (4) (446 SE2d 186) (1994) (denial of summary judgment not moot when a verdict is reversed and the case is remanded for new trial). The denial of the bank's motion for summary judgment on Defendant's Hunt's counterclaim is therefore moot.

2. In Enumeration No. 4, the bank contends the trial court erred by failing to direct a verdict in its favor on the ground that the Defendant Borrowers and Guarantors had waived any defenses given that the Note was renewed a number of times after the bank failed to respond to the June 2008 proposal.

This Court has held that under the doctrine of "estoppel by silence," a debtor waives any defenses to payment of a promissory note, including fraud, by virtue of its renewal of the note after it has knowledge of those defenses. *Nat. Duck Mills v. Catlin*, 10 Ga. App. 240, 245-246 (73 SE 418) (1912). The Supreme Court has extended that doctrine to individual guarantors of a corporate obligation who attempt to assert a defense as to which they had knowledge when they signed a renewal of the corporation's obligation. *Citizens & Southern Nat. Bank v. Yeager Enterprises*, 247 Ga. 797, 799 (279 SE2d 674) (1981). See also *NationsBank, N. A. v. Peavy*, 227 Ga. App. 137, 139 (3) (488 SE2d 699) (1997) ("the renewal cuts off all defenses of which the maker then had knowledge") (citation and punctuation omitted); *Harris v. First Nat. Bank of Cartersville*, 163 Ga. App. 49, 52 (3) (292 SE2d 725) (1982) (following *Yeager Enterprises*).

(a) Here, after the bank failed to respond to Roberts's June 2008 proposal, Roberts signed several renewals of the Note on behalf of all Borrowers. He admitted

8

that he did so without contacting the bank or having any discussion with anyone from the bank to the effect that he was still waiting to hear back from the bank on the proposal. And, as pointed out by the appellees themselves, he had the full authority of the other owners to represent them vis-a-vis the bank; indeed, he signed the Note, Loan Agreement, and Security Agreement on behalf of all the Borrowers. As stated in *Nat. Duck Mills*,

> It is unthinkable that the plaintiffs would have consented to this novation, had the defendants in good faith put the plaintiffs on notice that they denied owing the plaintiffs one cent . . . , and that, when the renewal note fell due, they would refuse its payment, force the plaintiffs to sue on the note, and then set up this defense.

*Nat. Duck Mills*, supra at 245. Accordingly, the Defendant Borrowers were estopped by silence from asserting any defenses to their obligation on the Note, and the trial court erred by not directing a verdict in favor of the bank on its claims under the Note.

(b) Similarly with regard to the Guarantees, because Roberts signed the Note renewals with full knowledge of the bank's failure to respond to his June 2008 proposal, he was estopped by silence from raising any defenses to his guaranty arising out of that event. *Yeager Enterprises*, supra at 799. The trial court therefore erred by denying the bank's motion for directed verdict on Roberts' personal guaranty.

9

There is an issue of fact, however, as to whether the other Guarantors who signed renewals – Monroe Hunt and Jerry Hunt – had knowledge of the June 2008 proposal at the time they signed the renewals. Roberts testified that he told Monroe Hunt of his idea in December 2007 but that he did not tell any of the owners about the meeting in June 2008 . We also find no evidence that Roberts told anyone that the bank failed to respond to the proposal. Although there is some evidence that Monroe and Jerry Hunt may have known some relevant information concerning the June 2008 proposal , that evidence is not clear and undisputed, and therefore Ameris Bank was not entitled to a directed verdict against these other Guarantors based on the theory of estoppel by silence.

3. In Enumeration No. 3, the remaining viable enumeration of error, the bank contends the trial court erred by not granting its motions for directed verdict on the Note and the Guarantees because the Defendant Borrowers and Guarantors were unable to establish their two defenses to the bank's claims: that by refusing to respond to the June 2008 proposal, the bank breached a duty of good faith and fair dealing and failed to mitigate damages. Given we have already determined that the Defendant Borrowers were estopped from raising any defenses, we will only consider whether the Guarantors' defenses were viable. We agree with the bank that they were not.

10

Once a plaintiff establishes a prima facie case by producing a guaranty and showing that it was executed, "the plaintiff is entitled to judgment as a matter of law unless the defendant can establish a defense." (Footnote and punctuation omitted.) *Trendmark Homes v. Bank of North Ga.*, 314 Ga. App. 886, 887 (726 SE2d 138) (2012); see also *Big Sandy Partnership v. Branch Banking & Trust Co.*, 313 Ga. App. 871-872 (1) (723 SE2d 82) (2012). As shown above, the parties stipulated to the prima facie case on the Guarantees. We therefore turn to the defenses.

(a) Good Faith and Fair Dealing. "'Every contract imposes upon each party a duty of good faith and fair dealing in its performance and enforcement.' Restatement, Second, Contracts, § [205]."[3] (Punctuation and citation omitted.) *Brack v. Brownlee*, 246 Ga. 818, 820 (273 SE2d 390) (1980). But the implied duty cannot be breached apart from the contractual provision to which it pertains:

> Every contract implies a covenant of good faith and fair dealing in the contract's performance and enforcement. The implied covenant modifies and becomes a part of the provisions of the contract, but the covenant cannot be breached apart from the contract provisions it modifies and therefore cannot provide an independent basis for liability.

---

[3] The applicable section number of the Restatement was changed in the Official Draft. See Restatement, Second, Contracts, § 205.

11

(Citations omitted.) *Myung Sung Presbyterian Church v. North American Assn. etc.*, 291 Ga. App. 808, 810 (2) (662 SE2d 745) (2008). See also *Morrell v. Wellstar Health System*, 280 Ga. App. 1, 5 (2) (633 SE2d 68) (2006) ("there is no independent cause of action for violation of the covenant apart from breach of an express term of the contract") (citation omitted). Similarly, "[t]here can be no breach of an implied covenant of good faith where a party to a contract has done what the provisions of the contract expressly give him the right to do." *Automatic Sprinkler Corp. &c. v. Anderson*, 243 Ga. 867, 868 (257 SE2d 283) (1979).

The Guarantors argue that the bank breached its implied obligation of good faith and fair dealing, which, they assert, arose from the following language found in each Guarantee: "I waive all claims for loss or damage caused by your acts or omissions where you acted reasonably and in good faith." We disagree.

First, contracts of guaranty should be construed strongly against the guarantor, and "if the construction is doubtful, that which goes most strongly against the party undertaking the obligation is generally to be preferred." (Citations and punctuation omitted.) *Town Center Assoc. v. Workman*, 227 Ga. App. 55, 58 (1) (487 SE2d 624) (1997). Second, as shown above, the duty of good faith and fair dealing only operates in connection with specific promises given in the contract. More specifically, "where

12

the manner of performance [of a contractual provision] is left more or less to the discretion of one of the parties to the contract, he is bound to the exercise of good faith." (Citation and punctuation omitted.) *Rogers v. Farmers & Merchants Bank*, 247 Ga. App. 631, 633 (545 SE2d 51) (2001).

The duty of good faith and fair dealing has no application to the language of the Guaranty upon which the Guarantors rely. That language does not impose a duty on the bank; rather, it describes claims that are waived by the guarantor. Because the Guarantors have not established that Ameris Bank owed them a contractual obligation under the Guarantees related to the failure to respond to the June 2008 proposal, they have failed to raise a viable defense of breach of a duty of good faith and fair dealing. See, e.g., *Secured Realty & Investments v. Bank of North Ga.*, 314 Ga. App. 628, 630 (1) (b) (725 SE2d 336) (2012) (guarantor failed to establish that there was a contractual obligation in the guarantee related to his good faith claim).

(b) Failure to Mitigate Damages. Finally, the bank argues that the Guarantors have not raised a viable defense of failure to mitigate damages and that therefore the claim of such a defense was not an impediment to a directed verdict. We agree.

The rule requiring a party to mitigate damages "is not applicable where there is an absolute promise to pay." (Citation omitted.) *Reid v. Whisenant*, 161 Ga. 503,

13

510 (131 SE 904) (1926). See also *American Express Travel Related Svcs. Co. v. Web, Inc.*, 261 Ga. 480, 483 (3) (405 SE2d 652) (1991) (following *Reid*). Compare OCGA § 13-6-5 ("Where by a breach of contract a party is injured, he is bound to lessen the damages as far as is practicable by the use of ordinary care and diligence."). And this Court has specifically held that where notes and guarantees contain an absolute promise to pay, the duty to mitigate does not apply. *Big Sandy Partnership*, 313 Ga. App. at 873 (2).[4]

Here, the parties stipulated that the Guarantees were unconditional, and the fact that the Guarantees are absolute and unconditional is made plain in the Guarantees themselves.[5] As shown, the Guarantees provide that the Guarantors consent to the

---

[4] The federal case upon which the Guarantors rely, *General Electric Capital Co. v. Nucor Drilling*, 551 FSupp2d 1375 (MD Ga. 2008), is not binding upon us, and it failed to consider the language of the relevant agreement when determining whether there was an absolute promise to pay. See id. at 1380; *REL Development v. Branch Banking & Trust Co.*, 305 Ga. App. 429, 432 (1), n. 8 (699 SE2d 779) (2010).

[5] Each identical Guaranty states:

I absolutely and unconditionally . . . guaranty to [the Bank] the payment . . . of each and every Debt . . . that the Borrower . . . may now or at any time in the future owe you.

I am unconditionally liable under this Guaranty, regardless of whether or not you pursue any of your remedies against the Borrower . . . or against any Property [securing debt]. My obligation to pay according to the terms of this Guaranty shall not be affected by the illegality, invalidity or unenforceability of any notes or agreements evidencing the

14

bank releasing, substituting or impairing any collateral under the Note. And the Guarantees provide that the Guarantors' liability is unaffected by any action by the bank that could make the Note unenforceable against the Borrowers. Because the Guarantees contain absolute promises to pay, the bank had no duty to mitigate. Accordingly, the defense of failure to mitigate damages was not a bar to a directed verdict in favor of the bank.

For the above reasons, the trial court erred by failing to grant a directed verdict in favor of Ameris Bank against the Defendant Borrowers and Guarantors. The judgment is therefore reversed in part and the case remanded for entry of judgment in favor of Ameris Bank on all claims; the judgment is affirmed with regard to Hunt's counterclaim.

*Judgment affirmed in part and reversed in part, and case remanded with direction. Miller, P. J., and Ray, J., concur.*

---

Debt . . . or any other circumstances which make the indebtedness unenforceable against the Borrower. I will remain obligated to pay on this Guaranty even if any other person who is obligated to pay the Debt, including the Borrower, has such obligation discharged in bankruptcy . . . or otherwise discharged by law.

I agree that this is an absolute and unconditional Guaranty.

My obligation is absolute and . . . any act or omission by you which impairs the Property will not relieve me or my liability under this Guaranty.

15