[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-12780

Non-Argument Calendar

_____

U.S. BANK NATIONAL ASSOCIATION, as trustee for The Registered Holders of ML-CFC Commercial Mortgage Trust 2007-5, Commercial Mortgage Pass-Through Certificates, Series 2007-5,

Plaintiff-Appellee,

*versus*

LEON WILDSTEIN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:19-cv-01151-LMM

_____

Before WILSON, BRANCH, and ANDERSON, Circuit Judges.

PER CURIAM:

U.S. Bank National Association sued Leon Wildstein for breach of contract. In its first motion for summary judgment, on the issue of breach, U.S. Bank argued that Wildstein breached the parties' Guaranty Agreement (1) when he diverted to himself commercial real estate rental payments that should have been paid into a collateral bank account, and (2) when he refused to surrender those rents upon demand. In a second motion for summary judgment on damages, the bank argued that there was no genuine dispute that it was owed the total value of rents diverted by Wildstein. The district court agreed and granted both motions for summary judgment. On appeal, Wildstein argues that there is a dispute of material fact about whether he willfully breached the Guaranty, whether he is protected by the limitation of liability provision in the Guaranty, and the amount of damages he owes. After careful review, we affirm the district court's grant of summary judgment.

## I. Background

### A. The Operative Agreements

Cangor Investments, LLC ("Cangor") and U.S. Bank are the borrower and lender, respectively, under a commercial real estate mortgage and note. Leon Wildstein is the sole manager of Cangor and owns 90% of its membership interests. The legal relationship between Cangor and U.S. Bank began on November 12, 2009, when Cangor assumed from a previous borrower a $7,575,000 note held by U.S. Bank on a commercial property located in Kennesaw, Georgia. The maturity date of the loan was December 8, 2016. That transaction was memorialized in an Assumption Agreement.

The same day, and as part of the assumption, Cangor and U.S. Bank executed a Cash Collateral Account Agreement ("Collateral Agreement"). The Collateral Agreement required Cangor to set up a specific bank account for the collection of rents paid by tenants of the commercial property ("the collection account"). The agreement required Cangor to send a tenant direction letter instructing the then-tenant of the commercial property, Aaron's Rents, Inc., to send rent payments directly to the collection account. Alternatively, if the tenants erred and sent any rents directly to Cangor, Cangor was required to hold the rent in trust for the benefit of U.S. Bank and deposit said rents into the collection account within one business day. Without the prior written consent of U.S. Bank, Cangor could not "terminate, amend, revoke or modify any Tenant Direction Letter" or

otherwise "direct or cause any tenant . . . to pay any amount in any manner other than as provided in the related Tenant Direction Letter."

The cash in the collection account was then to be distributed in a specific order, otherwise known as a "waterfall": first to the tax and insurance account, then to the U.S. Bank "until an amount equal to the amount of principal of and interest on the Principal Balance due and payable by [Cangor] on such Payment Date has been allocated thereto," next to the capital expenditure reserve account, and finally, if a cash management period existed— meaning an occurrence of a triggering event[1] as defined in the contract—and there was no event of default, to Cangor for operating and extraordinary expenses, at U.S. Bank's discretion, and the remainder to a U.S. Bank cash sweep reserve account.

If a "triggering event" occurred, including "an Event of Default," a cash management period would commence, and U.S. Bank could notify Cangor that all funds on deposit in the collection

---

[1] The contract defines a trigger event as "any of the following: (i) an Event of Default; (ii) the date that is eighteen (18) months prior to the Maturity Date unless borrower has deposited with Lender a Letter of Credit in accordance with Section 13.2 of the Loan Agreement; (iii) the bankruptcy or insolvency of the tenant under the Aaron Rents' Lease or its parent company (iv) the tenant under the Aaron Rents' Lease goes dark or otherwise ceases rent payments under the Aaron Rents' Lease; or (v) the net worth or liquidity of Aaron Rents, Inc. falls below a reasonably acceptable amount to Lender."

account were to be remitted to U.S. Bank, who would then establish a different cash collateral account held by U.S. Bank. The agreement specified that, in the event of default, the "waterfall" distribution would not apply, and "any amounts deposited into or remaining in any Account shall be for the account of Lender and may be withdrawn by Lender to be applied in any manner as Lender may elect in Lender's discretion."

Wildstein also signed a Guaranty Agreement. In the agreement, Wildstein, the guarantor, "irrevocably and unconditionally guarantee[d] to Lender the payment and performance of the Guaranteed Obligations as and when the same shall be due and payable." The "Guaranteed Obligations" for which Wildstein was liable were defined as "recourse liabilities," meaning "[l]osses incurred by Lender arising out of or caused by . . . (a) fraud, intentional misrepresentation, or willful misconduct by Borrower or Guarantor in connection with the Loan" and "(d) the misapplication, misappropriation, or conversion by Borrower, Guarantor, or any Affiliate of . . . any Rents or security deposits."

Wildstein "consent[ed] and agree[d] . . . that [his] obligations hereunder shall not be released, diminished, impaired, reduced, or adversely affected in any way." He "waive[d] any common law, equitable, statutory or other rights . . . which Guarantor might have in connection with" any "[m]odifications, [r]eleases," "[c]ondition of Borrower or Guarantor" such as insolvency, and "[i]nvalidity" and [u]nenforceability," including

any "valid defenses, claims or offsets (whether at law, equity, or by agreement) which render the Guaranteed Obligations wholly or partially uncollectible from Borrower."[2]    The agreement did include a limited liability provision providing that Wildstein was not liable for any costs or losses incurred by U.S. Bank due to U.S. Bank's gross negligence or willful misconduct.

Prior to the loan maturity date, Cangor contacted U.S. Bank about renewing the loan.   According to Wildstein, despite the bank's reassurances that "everything was okay" with Cangor's request, U.S. Bank waited until weeks before the maturity date to notify Cangor that the loan would not be renewed.  Cangor did not pay the loan in full on the maturity date.  Cangor requested an extension to obtain alternative financing and a forbearance period, but U.S. Bank rejected those requests and initiated foreclosure proceedings.  In July 2017, Cangor filed a verified complaint in state court seeking to enjoin foreclosure and recover damages for U.S. Bank's alleged fraud, breach of fiduciary duty, breach of contract, and breach of implied duty of good faith and fair dealing.  This state court litigation is ongoing.

Meanwhile, when the loan was not repaid on the maturity date, U.S. Bank terminated Cangor's right to withdraw funds from the collection account.  However, deposits could still be made, and Aaron's Rents continued to deposit its rent into the collection

---

[2] The parties also agreed that the contract would be interpreted and enforced under Georgia law.

21-12780                Opinion of the Court                7

account. In June 2017, Wildstein sent Aaron's Rents an e-mail directing it to remit the monthly rent payments directly to him instead of the collection account. U.S. Bank seized the money in the collection account—$549,730.41—and applied it to the outstanding loan. Thereafter, U.S. Bank applied a letter of credit posted by Cangor for $415,000 to the outstanding loan amount. The unpaid principal balance of the loan remains $7,575,000.

Wildstein stated that he believed the collection account was frozen after U.S. Bank terminated Cangor's right to withdraw funds, and therefore directed tenant Aaron's, Inc. to send the rent to him. Because U.S. Bank seized the collection account and received Cangor's letter of credit, Wildstein "was operating under the assumption that [U.S. Bank was] applying the $549,730.41 from the frozen account and the $415,000 letter of credit to the mortgage," and Cangor did not make any direct mortgage payments to U.S. Bank. According to Wildstein, U.S. Bank did not complain about the lack of mortgage payments for almost a year and a half. Then in February 2019, Wildstein received a demand letter requesting Wildstein remit the unaccounted-for monthly rent payments for the previous 20 months to U.S. Bank. In response, Wildstein offered to pay the difference between the mortgage payments that were allegedly due and the amounts U.S. Bank obtained previously from the collection account and the letter of credit. U.S. Bank has not accepted Wildstein's offer to repay.

### B. Procedural History

U.S. Bank subsequently sued Wildstein for breach of contract in federal court, arguing that Wildstein breached the Guaranty Agreement.  The bank filed a motion for summary judgment, which Wildstein opposed.  The district court granted the motion in part, determining that there was no question of fact that Wildstein had breached the Guaranty because he engaged in willful misconduct by violating a condition of the Collateral Agreement by instructing Aaron's Rents to remit the rental payments to him, but a question of fact remained as to the amount of damages owed to U.S. Bank.  The district court found that Wildstein's breach was willful because he "intentionally did what the Collateral Account Agreement forbade," and because the facts Wildstein offered to dispute his "willful" breach—that he believed the account was frozen, that he did not challenge U.S. Bank's control of the funds in the collection account, and that he offered to repay what was owed—did not create a genuine dispute that he willfully breached the agreement.

In January 2021, U.S. Bank filed a supplemental motion for summary judgment on damages which was granted in July.  The district court held that, after additional discovery, U.S. Bank was able to demonstrate that there was no dispute of material fact that Wildstein owed U.S. Bank the total amount of the diverted rents ($2,138,845) plus prejudgment interest and attorney's fees as specified in the contract.  This appeal on both motions for summary judgment followed.

## II. Discussion

"We review a district court's grant of summary judgment *de novo*, view[ing] the evidence in the light most favorable to the non-moving party." *Gogel v. Kia Motors Mfg. of Ga., Inc.*, 967 F.3d 1121, 1134 (11th Cir. 2020) (en banc) (quotations omitted). Summary judgment is proper if the materials in the record indicate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### A. Liability

Wildstein argues that there is a question of material fact as to whether he engaged in willful misconduct or engaged in conversion such that he breached the terms of the Guaranty Agreement. He also argues that there is a question of fact as to whether the alleged losses are the result of U.S. Bank's own gross negligence or willful misconduct, such that he would not be liable under the limited liability provision of the Guaranty Agreement. Under Georgia law, "contracts of guarantee should be construed strongly against the guarantor, and if the construction is doubtful, that which goes most strongly against the party undertaking the obligation is generally to be preferred." *Ameris Bank v. All. Inv. & Mgmt. C., LLC*, 739 S.E.2d 481, 486 (2013) (quotation omitted). "Once a plaintiff establishes a prima facie case by producing a guarantee and showing that it was executed, the plaintiff is entitled

to judgment as a matter of law unless the defendant can establish a defense." *Id.* at 485 (quotation omitted). "Georgia law is clear that creditors are entitled to summary judgment in a suit on an unconditional guaranty when the guarantor has waived all of his defenses." *Core LaVista, LLC v. Cumming*, 709 S.E.2d 336, 340–41 (2011).

The Guaranty Agreement was created to guaranty Cangor's obligations and proper performance under the assumption of the note by making Wildstein liable for "[l]osses incurred by Lender arising out of or caused by . . . fraud, intentional misrepresentation, or willful misconduct by Borrower or Guarantor in connection with the Loan" and "the misapplication, misappropriation, or conversion by Borrower, Guarantor, or any Affiliate of . . . any Rents or security deposits." The Agreement also limited Wildstein's liability for any injuries to U.S. Bank incurred because of its own gross negligence or willful misconduct. After careful review, we find that there is no dispute of material fact that Wildstein willfully engaged in misconduct and that the limitation of liability provision does not protect Wildstein here.

It is undisputed that Wildstein sent an e-mail to Aaron's Rents, the tenant at the property, directing Aaron's to send rent to Wildstein instead of to the collection account. It is also undisputed that the Collateral Agreement required that the tenant send payments directly to the collection account and provided that Cangor could not "terminate, amend, revoke or modify any Tenant Direction Letter" or otherwise "direct or cause any tenant

21-12780                Opinion of the Court                11

. . . to pay any amount in any manner other than as provided in the related Tenant Direction Letter" without the prior consent of U.S. Bank.    Therefore, if Wildstein's direct contravention of the Collateral Agreement by directing Aaron's Rents to send rent money to himself rather than the collection account, qualifies as "willful misconduct" under Georgia law, Wildstein is liable for the losses incurred by U.S. Bank by the misconduct.  We turn next to this question.

The parties dispute whether Georgia law requires an "intent to inflict injury" to establish willful misconduct. *See 2010-1 SFG Venture LLC v. Lee Bank & Tr. Co.*, 775 S.E.2d 243, 251 (Ga. App. 2015) (defining willful misconduct in a limitation on liability provision of a participation agreement to require "an actual intention to do harm or inflict injury").  Wildstein argues that there is dispute of material fact about whether he lacked the requisite intent to "do harm or inflict injury," because he believed the collection account to be frozen when he directed Aaron's Rents to send the rent payment to him, and he assumed the monies seized by U.S. Bank from the collection account and his letter of credit satisfied the mortgage obligations.  As further indication that he was not acting with an intent to harm U.S. Bank, he notes that, after receiving the demand letter for rents, he offered to pay U.S. Bank the difference between the monthly payments due and the monies U.S. Bank had seized and to resume monthly mortgage payments.

Assuming without deciding that an "intent to inflict injury" is required to show "willful misconduct," as Wildstein argues, none of Wildstein's facts, taken as true, create a material dispute of fact that Wildstein willfully intended to do harm to U.S. Bank, and therefore engaged in willful misconduct by writing Aaron's and telling the tenant to send money to Wildstein instead of U.S. Bank in breach of the Collateral Agreement. Assuming Wildstein believed the collection account to be frozen, he still intentionally acted contrary to the terms of the Collateral Agreement when he directed the tenant to pay its monthly rent to him personally— thereby diverting funds that belonged to U.S. Bank. Accordingly, Wildstein, the sole manager of Cangor, engaged in willful misconduct by misappropriating rent monies, resulting in losses to U.S. Bank for which he was liable under the terms of the Guaranty Agreement.[3]

Alternatively, Wildstein argues that he is not liable because, under the limitation of liability provision, he is not liable for losses incurred due to the gross negligence or willful misconduct of U.S. Bank. Wildstein has not offered any facts indicating that any

---

[3] Wildstein argues that the collection account was "frozen" because a check he wrote from the account was not honored, while U.S. Bank asserts that the account was never frozen and only Cangor's right to withdraw funds was suspended. However, it is irrelevant whether the account was frozen or Cangor's withdrawal privileges were simply suspended. Either way, the diversion of rents to Wildstein's own account was a violation of the plain terms of the Collateral and Guaranty Agreements.

alleged gross negligence or willful misconduct by U.S. Bank caused him to divert the rental funds.  Wildstein cited evidence from his state court case as proof of U.S. Bank's misconduct, including U.S. Bank's attempt to foreclose on the loan and its failure to renew it, that would relieve him of liability here.  But Wildstein does not explain how these facts establish that U.S. Bank, through gross negligence or willful misconduct, caused the losses it incurred due to Wildstein's diversion of the rental payments.

Wildstein also voluntarily waived his common law and equitable defenses in the Guaranty Agreement, including "valid defenses, claims or offsets . . . which render the Guaranteed Obligations wholly or partially uncollectible from Borrower." "Georgia law is clear that creditors are entitled to summary judgment in a suit on an unconditional guaranty when the guarantor has waived all of his defenses." *Core LaVista, LLC*, 709 S.E.2d at 340–41.  Thus, even if U.S. Bank engaged in misconduct related to the mortgage note, this defense did not relieve Wildstein of his obligations under the Guaranty Agreement because he failed to state any facts alleging that gross negligence or willful misconduct by U.S. Bank caused him to divert the rental payments.

Therefore, the district court did not err by granting summary judgment on U.S. Bank's claim that Mr. Wildstein breached the Guaranty Agreement.[4]

### B.  Damages

Wildstein argues that there are questions of fact about whether the rent received by Wildstein was the appropriate measure of damages.

Under the Collateral Agreement, "[u]pon the occurrence of an Event of Default, any amounts deposited into or remaining in any Account shall be for the account of Lender and may be withdrawn by Lender to be applied in any manner as Lender may elect in Lender's discretion."  The parties do not dispute that the total value of the loan was due on December 8, 2016, and that the balance on the loan was not paid.  The initial loan agreement assumed by Cangor defined events of default as when the "[b]orrower fails to pay the outstanding Indebtedness on the Maturity Date," which occurred here.  Therefore, there is no question of fact that an event of default occurred here.  According to the Collateral Agreement, upon an event of default, "any amounts deposited into or remaining in any Account shall be for the account of Lender and may be withdrawn by Lender to be applied in any manner as Lender may elect in Lender's discretion."

---

[4] Because we find that there is no material dispute of fact as to whether Wildstein breached the Guaranty through "willful misconduct," we do not discuss his arguments related to conversion.

As of June 2017, Wildstein stopped depositing the rents into the collateral account.  Because Cangor was in default, U.S. Bank could have used the funds at its discretion.  Therefore, there is no dispute of material fact that "to compensate the injured party for the loss," U.S. Bank is owed the value of the collected rents diverted to Wildstein.[5] *See Goody Prod., Inc.*, 740 S.E.2d at 270.

**AFFIRMED.**

---

[5] The district court also granted prejudgment interest and attorney's fees below. Wildstein does not challenge those calculations on appeal.