[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-14289
Non-Argument Calendar
_____

D.C. Docket No. 1:13-cv-03831-TWT

ND PROPERTIES,

                                                              Plaintiff-Appellee,

versus

BLRG RESTAURANT GROUP, INC.,

                                                              Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(May 12, 2016)

Before MARCUS, WILSON, and ROSENBAUM, Circuit Judges.

PER CURIAM:

Buckhead Life Restaurant Group, Inc. ("BLRG") appeals the district court's grant of summary judgment in favor of ND Properties, on ND Properties' complaint, which sought damages for breach of guaranty and attorneys' fees. On

appeal, BLRG argues that:   (1) the district court erred in concluding BLRG had waived any defenses to liability pursuant to the terms of the guaranty agreement; (2) ND Properties failed to establish with competent evidence its claimed amounts of unpaid rent, re-letting costs, and interest; and (3) ND Properties failed to satisfy the notice requirement for attorneys' fees under Ga. Code Ann. § 13-1-11(a)(3), and, even if the notice requirement was satisfied, the district court's attorneys' fees calculation was erroneous.  After careful review, we affirm in part, reverse in part, and remand the case for further proceedings.

A.

The relevant background is this.  In June 1998, ND Properties' predecessor-in-interest, as lessee, entered into a commercial lease agreement with 3455, LLC ("3455"), under which 3455 leased space in the lower floors of an office building, called the Pinnacle, in the Buckhead neighborhood of Atlanta, Georgia.  3455 used the space to operate a restaurant.  The lease was to expire on October 31, 2014.

In the lease, 3455 agreed to pay annual rent in the amount of $264,000, payable in 12 equal installments on the first day of each calendar month.  The lease provided that, in the event 3455 defaulted on its rent payments:

> Landlord may terminate Tenant's right of possession (but not this Lease) . . . without thereby releasing Tenant from any liability hereunder, [and] without terminating this Lease . . . and, if Landlord so elects, make such commercially reasonable alterations, decorations and repairs as, in Landlord's judgment, may be necessary to relet the Demised Premises, and Landlord may, but shall be under no

2

obligation to do so, relet the Demised Premises or any portion thereof in Landlord's or Tenant's name . . . at such rental or rentals and upon such other terms as Landlord reasonably may deem advisable . . . and receive the rent therefor, Tenant hereby agreeing to pay to Landlord the deficiency, if any, between all Rent reserved hereunder and the total rental applicable to the Lease Term hereof obtained by Landlord re-letting, and Tenant shall be liable for Landlord's reasonable expenses in redecorating and restoring the Demised Premises and all reasonable costs incident to such re-letting, including broker's commissions and lease assumptions . . . .

BLRG, pursuant to a separate guaranty agreement, "absolutely and unconditionally" guaranteed 3455's "full and prompt payment of [rent] . . . and all other charges and sums (including, without limitations, Landlord's legal expenses and attorneys' fees and disbursements) payable by [3455] under the Lease."

Beginning in late 2008, 3455 failed to make its monthly rent payment on several occasions. In November 2009, ND Properties commenced a series of dispossessory actions in Georgia state court. During court-ordered mediation in August 2011, 3455 and ND Properties entered into a consent agreement, in which ND Properties agreed not to evict 3455 before 11:59 p.m. on November 30, 2011, and 3455 agreed to pay rent in advance through November 30, 2011. 3455 also agreed that its "right to possess the premises (but not the Lease) shall immediately terminate" at 11:59 p.m. on November 30, 2011. 3455 vacated the premises by November 30, 2011, and made no further rent payments. ND Properties then filed the instant complaint against BLRG, seeking inter alia, the rent payments due under the lease from the time 3455 vacated until ND Properties found a new

tenant, re-letting costs, accrued interest, and attorneys' fees.[1]  The district court granted ND Properties' motion for summary judgment, holding BLRG liable for $464,079.49 in unpaid rent; $222,884.28 in re-letting costs; $48,627.01 in accrued interest; and $73,633.57 in attorneys' fees.

B.

We review a district court's order granting summary judgment de novo, applying the same legal standard as the district court.  Nat'l Parks Conservation Ass'n v. Norton, 324 F.3d 1229, 1236 (11th Cir. 2003).  We view the material presented and draw all factual inferences in the light most favorable to the non-movant.  Carter v. City of Melbourne, 731 F.3d 1161, 1166 (11th Cir. 2013). Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  When the moving party has the burden of proof at trial, it must affirmatively show the absence of any genuine issue of material fact by pointing to competent evidence in the record, which, if uncontroverted, would entitle the moving party to a directed verdict at trial.  Rich v. Sec'y, Fla. Dep't of Corr., 716 F.3d 525, 530 (11th Cir. 2013).  "If the moving party makes such an affirmative showing, it is entitled to summary judgment

---

[1]  While the instant complaint was pending, ND Properties obtained a separate federal-court judgment against 3455.  Under Georgia law, that judgment created a rebuttable presumption of Buckhead Life's liability under the guaranty agreement.  See Noorani v. Sugarloaf Mills Ltd. P'ship of Ga., 708 S.E.2d 685, 690-92 (Ga. Ct. App. 2011).

4

unless the nonmoving party, in response, comes forward with significant, probative evidence demonstrating the existence of a triable issue of fact." Id. (quotation omitted). To discharge their respective burdens, the parties may rely on affidavits or declarations that are "made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

## C.

First, we reject BLRG's claim that the district court erred in holding that BLRG had waived its defenses to liability pursuant to the terms of the guaranty agreement. In Georgia, a plaintiff who produces an executed guaranty agreement is entitled to judgment as a matter of law on a claim against the guarantor for liability under the guaranty, unless the guarantor establishes a defense. See Ameris Bank v. Alliance Inv. & Mgmt Co., LLC, 739 S.E.2d 481, 485 (Ga. Ct. App. 2013). BLRG has argued that it is not liable for 3455's unpaid obligations under the lease because certain actions ND Properties took during the lease term -- including irrationally rejecting 3455's rent payments and filing unwarranted dispossessory actions -- helped cause 3455 to default, thus exposing BLRG to more risk. The Georgia Code provides that "[a]ny act of the creditor, either before or after judgment against the principal, which injures the surety or increases his risk or exposes him to greater liability shall discharge him." Ga. Code. Ann. § 10-

5

7-22. However, the protections of § 10-7-22 are waivable. <u>See</u> <u>Builders Dev. Corp. v. Hughes Supply, Inc.</u>, 529 S.E.2d 388, 389 (Ga. Ct. App. 2000).

Here, the district court found that, in the following provisions of the guaranty agreement, BLRG had waived the defense it was attempting to assert:

> Guarantor hereby expressly agrees that the validity of this Guaranty and the obligations of Guarantor hereunder shall in no way be terminated, affected, diminished or impaired by reason of . . . any non-liability of Tenant under the Lease, whether by insolvency, discharge in bankruptcy, or any other defect or defense which may now or hereafter exist in favor of Tenant.

> This Guaranty shall be a continuing guaranty, and the liability of Guarantor hereunder shall in no way be affected, modified or diminished by reason of . . . any dealings or transactions or matter or thing occurring between Landlord and Tenant.

On appeal, BLRG claims that it did not waive any defenses in this guaranty agreement, which the district court erroneously construed against it. BLRG relies on <u>House Hasson Hardware Co., Inc. v. Lawson's Home Ctr., Inc.</u>, 772 S.E.2d 389 (Ga. Ct. App. 2015), which held, in a case involving a guarantor's statute-of-frauds defense, that "a court must strictly construe an <u>alleged</u> guaranty contract in favor of the guarantor." <u>Id</u>. at 392 (quotation omitted, emphasis added). Other Georgia cases hold otherwise -- that is, that "contracts of guarantee should be construed strongly against the guarantor, and if the construction is doubtful, that which goes most strongly against the party undertaking the obligation is generally to be preferred." <u>Ameris Bank</u>, 739 S.E.2d at 486 (quotation omitted). But even

6

assuming, arguendo, that House Hasson would apply to this case -- which does not involve an "alleged" guaranty contract or a guarantor's statute-of-fraud's defense -- BLRG has pointed to no ambiguities in the guaranty agreement.

Rather, as the district court found, BLRG explicitly waived in the guaranty agreement any defenses to its liability related to any "defense which may now or hereafter exist in favor of [3455]" and "any dealings or transactions or matter or thing occurring between [ND Properties] and [3455]." ND Properties' actions with regard to 3455 during the lease term, which allegedly helped cause 3455 to default, unambiguously qualify as dealings, transactions, matters, or things, occurring between ND Properties and 3455. Thus, the district court did not err in holding, on summary judgment, that BLRG had waived its defenses based on that conduct.

D.

There is merit, however, to BLRG's claim that ND Properties failed to establish with competent evidence its claimed amount of re-letting costs (and the associated amount of interest), although we find no error concerning the unpaid rent amount or the interest rate. In providing evidence of these amounts -- unpaid rent, re-letting costs, and interest -- ND Properties relied on the lease, consent agreement, and guaranty. It also relied on a declaration by Linda Beauchamp, who was employed from June 1994 through October 2012 as a Senior Property Manager with the management company ND Properties hired to manage the

7

Pinnacle building.  In her declaration, Beauchamp testified that neither 3455 nor BLRG made any rent payments after 3455 vacated the premises on November 30, 2011.  Beauchamp added that, in December 2012, ND Properties executed a lease with a new tenant, who began paying rent on October 1, 2013.  She calculated that, pursuant to the terms of the lease, 3455 owed $464,074.49 in unpaid rent for the period from December 1, 2011, through September 30, 2013.

We are unconvinced by BLRG's challenges to ND Properties' claimed amount of past-due rent.  It is true that Beauchamp only worked for ND Properties' management company through October 2012, so she could not have had personal knowledge of 3455 or BLRG's nonpayment from the time she left until September 2013.  Nevertheless, BLRG does not dispute that neither 3455 nor it paid rent during the 22-month period from December 1, 2011, through September 30, 2013.

Nor has BLRG specifically disputed Beauchamp's calculation of the total unpaid rent amount for the relevant 22-month period, which she testified was $464,074.49.  As the district court noted, the lease provided an annual rental rate of $264,000, which yielded a monthly rental rate of $22,000.  Simple arithmetic shows the total rent for 22 months would be $484,000.  The figure Beauchamp calculated ($464,074.49) was lower than that amount, and, other than challenging Beauchamp's competence, generally, BLRG has not claimed that the total she calculated overstated 3455's liability under the lease.  Accordingly, there was no

genuine dispute as to the amount of unpaid rent due under the lease, and the district court did not err in granting summary judgment for ND Properties on that issue.

We agree with BLRG, however, that Beauchamp's declaration was insufficient to support ND Properties' motion for summary judgment on its claimed amount of re-letting costs. In her declaration, Beauchamp testified that, in December 2012, ND Properties executed a ten-year lease with a new tenant, who began paying rent on October 1, 2013. She reported that ND Properties expended a total of $2,228,843 in re-letting costs, which included $26,000 in legal costs, $258,780 in commissions, $25,000 in construction management, and a $1,919,063 tenant improvement allowance. Beauchamp testified that ND Properties was only seeking to recover $222,884.28 from BLRG, which amount:

> was calculated by taking the total cost to re-let the Premises ($2,228,843.00), dividing that amount by 120 months (the term of the new tenant's lease (the "New Lease Term")) and then multiplying that amount ($18,573.69) by 12, which represents the number of months (November 1, 2013 to October 31, 2014) in the New Lease Term that were supposed to have been covered by the Lease at issue in this case.

But this declaration was insufficient to discharge ND Properties' burden at summary judgment to show no genuine issue of material fact as to the amount and reasonableness of its re-letting costs. For starters, Beauchamp's own declaration makes clear that she was no longer working for ND Properties' management company at the time ND Properties secured a new tenant; thus Beauchamp could not have had personal knowledge of ND Properties' re-letting costs. See Fed. R.

9

Civ. P. 56(c)(4) ("A[] . . . declaration used to support . . . a motion [for summary judgment] must be made on personal knowledge . . . and show that the . . . declarant is competent to testify on the matters stated."). Any information Beauchamp learned from the management company's current employees would be hearsay inadmissible at trial and could not be used to discharge ND Properties' burden at summary judgment. See Jones v. UPS Ground Freight, 683 F.3d 1283, 1293-94 (11th Cir. 2012) ("[I]nadmissible hearsay cannot be considered on a motion for summary judgment . . . [unless it] could be reduced to admissible evidence at trial or reduced to admissible form.") (quotations omitted).

Further, under the lease, 3455 (and BLRG as guarantor) was obligated to reimburse ND Properties only for "reasonable" re-letting costs, and the reasonableness of the re-letting costs is disputed by the declaration of 3455's Chief Financial Officer, Christo Makrides. Makrides testified that the premises were in good condition at the time 3455 vacated and that ND Properties could have re-let them without performing any construction work. Makrides also said (and ND Properties admitted in its summary-judgment reply) that ND Properties' lease with the new tenant covered a larger rental area than 3455's lease, so some of the tenant improvement costs were attributable to the new space, and not to 3455's breach. ND Properties did not address, through Beauchamp's declaration or otherwise, how the re-letting costs it incurred were reasonable; in particular, it

offered no argument in its summary-judgment reply to refute Makrides's testimony that the premises could have been re-let without remodeling.[2]

The district court concluded that BLRG failed to establish a genuine factual dispute on the issue of reasonableness because ND Properties only sought about 10% of its total re-letting costs. But ND Properties did not explain why it sought 10% of the re-letting costs, nor what percentage of the re-letting costs was appropriate. Moreover, as noted above, ND Properties failed to establish any of its re-letting costs with competent evidence, given Beauchamp's incompetency to testify on that issue. Thus, the district court erred by granting ND Properties' motion for summary judgment on its claim for $222,884.28 in re-letting costs.

BLRG also claims that Beauchamp's affidavit was insufficient to establish the interest rate applicable to the amounts due under the lease and the total amount of interest that had accrued ($48,627.01). But BLRG has not specifically disputed, or pointed to any evidence that contradicts, Beauchamp's testimony that the prime rate during the relevant time period was 3.25%, and that an interest rate of 5.25% applied under the lease's terms. The lease provided that an interest rate equal to "the then Prime Rate in effect from time to time plus two percentage points" would

---

[2] ND Properties contends that Makrides's testimony was not properly before the district court because it constituted expert testimony and BLRG failed to follow the notice requirements for expert witnesses under the local district court rules. The district court made no finding as to whether Makrides was offered as an expert witness, or whether BLRG complied with the local rules. In any event, we are not persuaded by ND Properties' argument that Makrides's testimony about the state of the premises at the time 3455 vacated and the size of the rental area in 3455's and the new tenant's leases constituted expert testimony.

apply to unpaid amounts due under the lease.  Thus, the district court correctly granted summary judgment for ND Properties on the applicable interest rate.

We agree with BLRG, however, that ND Properties failed to discharge its summary-judgment burden with regard to the amount of interest that had accrued. Beauchamp's declaration did not include any interest calculations, and failed to specify which unpaid balances had accrued interest and when interest began accruing.  Presumably, the total she cited included interest assessed on ND Properties' claims for certain parking and utilities charges, which claims ND Properties later voluntarily dismissed, and on ND Properties' claimed re-letting costs, on which the district court erroneously granted summary judgment. While ND Properties has established, at the summary-judgment stage, that it is entitled to interest at an annual rate of 5.25% on the $464,074.49 of unpaid rent, the record does not establish the amount of interest that has accrued on that sum. Accordingly, the district court erred in granting summary judgment for ND Properties on the amount of interest that accrued on 3455's unpaid obligations.

### E.

Next, we reject BLRG's claim that the district court erred in holding that ND Properties had satisfied the notice requirements for attorneys' fees set out in Ga. Code Ann. § 13-1-11(a)(3).  Section 13-1-11(a)(3) provides:

> The holder of the note or other evidence of indebtedness or his or her attorney at law shall, after maturity of the obligation, notify in writing

12

the maker, endorser, or party sought to be held on said obligation that the provisions relative to payment of attorney's fees in addition to the principal and interest shall be enforced and that such maker, endorser, or party sought to be held on said obligation has ten days from the receipt of such notice to pay the principal and interest without the attorney's fees.

Ga. Code Ann. § 13-1-11(a)(3). A plaintiff's complaint may satisfy the notice requirement of § 13-1-11(a)(3). See, e.g. Logan v. Hogan, 656 S.E.2d 868, 869 (Ga. Ct. App. 2008) ("Hogan in the complaint gave the ten-day notice required by [] § 13-1-11(a)(3)); Upshaw v. S. Wholesale Flooring Co., 398 S.E.2d 749, 752 (Ga. Ct. App. 1990) ("The complaint and the attachments thereto gave sufficient notice to appellant of appellee's intent to collect attorney's fees.").

Here, ND Properties' complaint contained a separate count for attorneys' fees under § 13-1-11. It also provided that BLRG had ten days from the date of service of the complaint to pay the unpaid amounts due under the lease and guaranty to avoid paying attorneys' fees. Based on this complaint, which the district court was permitted to consider on summary judgment, Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (noting the moving party may satisfy its summary-judgment burden by relying on, among other things, "the pleadings, depositions, answers to interrogatories, and admissions on file") (emphasis added, quotation omitted), the district court did not err in concluding that ND Properties had met the notice requirement provided by § 13-1-11(a)(3).

## F.

Lastly, we agree with BLRG that the district court should recalculate attorneys' fees on remand. By statute, attorneys' fees are limited to "15 percent of the first $500.00 of principal and interest owing on such note or other evidence of indebtedness and 10 percent of the amount of principal and interest owing thereon in excess of $500.00." Ga. Code Ann. § 13-1-11(a)(2). Because we are reversing the district court's grant of summary judgment on the amount of re-letting costs and interest BLRG owes under the lease and guaranty, we vacate the district court's award of attorneys' fees. On remand, after BLRG's total liability is determined, the district court should recalculate the attorneys' fees to which ND Properties is entitled, pursuant to the formula set forth in § 13-1-11(a)(2).

Accordingly, we: (1) affirm the district court's grant of summary judgment for ND Properties on its claim for $464,047.49 in unpaid rent, on the applicable interest rate, and on ND Properties' entitlement to attorneys' fees; (2) reverse the district court's grant of summary judgment for ND Properties on the issue of re-letting costs and the amount of interest accrued; (3) vacate the award of attorneys' fees; and (4) remand the case for further proceedings consistent with this opinion.

**AFFIRMED IN PART, REVERSED AND REMANDED IN PART.**

14