K. MICHAEL MOORE, CHIEF UNITED STATES DISTRICT JUDGE
THIS CAUSE came before the Court upon Defendant Samuel Yankelewitz's Motion for Summary Judgment ("Def.'s Mot.") (ECF No. 52) and upon Plaintiff Leader Global Solutions LLC's Motion for Summary Judgment ("Pl.'s Mot.") (ECF No. 60). The motions are now ripe for review.[1] For the reasons set forth below, Plaintiff's Motion for Summary Judgment is granted and Defendant's Motion for Summary Judgment is denied.
I. BACKGROUND
Leader Global Solutions LLC ("Plaintiff" or "LGS") is a Florida limited liability company with offices located in Coral Gables, Florida, See Defendant's Statement of Undisputed Material Facts ("Def.'s 56.1") (ECF No. 52) ¶ 2. LGS provides specialty trading services, including customized trade and supply chain financing to clients around the world. See Plaintiff's Statement of Undisputed Material Facts ("Pl.'s 56.1") (ECF No. 61) ¶ 1.
On February 24, 2015, LGS entered into a Master Sales Agreement ("MSA") with Corporación Yanber S.A. ("Yanber"), a large Cosa Rican-based company that manufactures flexible packaging that it distributes throughout the Americas. Id. ¶¶ 3-4. Samuel Yankelewitz ("Defendant" or "Yankelewitz") was the president of Yanber, and ran the company for more than forty years. Id. ¶ 3.[2] LGS and Yanber each retained Costa Rican counsel to negotiate *1316 the terms of the MSA, including the specific price markups and late fees that would be incurred if Yanber failed to make timely payments. Id. ¶ 9.
Under the MSA, LGS agreed to purchase the title to raw materials that were physically delivered directly to Yanber, then to resell the title to those materials to Yanber at a later date in exchange for a purchasing fee consisting of the invoiced price of the goods plus a markup (together, the "Purchasing Fee"). Id. ¶ 5. Under the terms of the MSA, Yanber had 150 days to pay the Purchasing Fee without incurring late charges or interest. Id. ¶ 6. Pursuant to the MSA, if the invoices issued by LGS to Yanber were not timely paid, there would be a seven-day payment grace period, after which such invoices would be "subject to a modified product markup of 11% and would and shall additionally bear a monthly interest rate equal to 2.75% of the outstanding balance owed by Buyer to LGS ...." Def.'s 56.1 ¶ 6; Pl.'s 56.1 ¶ 7. In the MSA, Yanber expressly acknowledged and agreed "that LGS is not a lender and that the [services it provides] do not constitute a loan." Pl.'s 56.1 ¶ 11. Yankelewitz viewed LGS as a supplier, not a lender. Id. ¶ 12.
As a condition of LGS entering into the MSA with Yanber, Yankelewitz executed a personal guaranty relating to Yanber's obligations under the MSA (the "Guaranty"). Pl.'s 56.1 ¶¶ 13-14. Yankelewitz executed the Guaranty on February 24, 2015-the same day that LGS and Yanber executed the MSA. Id. ; Def.'s 56.1 ¶ 4. The Guaranty was re-executed to correct a typographical error on April 30, 2015, but the April 30th version is otherwise substantively identical to the February 24th version. Pl.'s 56.1 ¶ 15.[3]
Pursuant to the MSA, Yanber executed promissory notes for each purchase it made from LGS ("Promissory Notes"). Id. ¶ 8. Each note contained different interest rates. Id. ¶¶ 8, 10; see also Def's Opp'n 56.1 (ECF No. 65) ¶ 8.
In May 2015, Yanber filed a petition to initiate a pre-bankruptcy proceeding, known as a "Convenio Preventivo" (hereinafter "Convenio"), in the insolvency court of San Jose, Cosa Rica (the "Costa Rican Bankruptcy Court"). Def.'s 56.1 ¶ 7; Pl.'s 56.1 ¶ 16. Yanber initiated the Convenio because it was insolvent. Pl.'s 56.1 ¶ 17. Yanber failed to make more than $3 million in payments to LGS owed under the MSA and related Promissory Notes. Id. The Convenio gave Yanber a chance to negotiate with its various creditors to create a proposal that would prevent Yanber from falling into bankruptcy. Id. ¶ 18.
On June 8, 2015, the Costa Rican Bankruptcy Court accepted Yanber's petition and commenced the Convenio. Def.'s 56.1 ¶ 9. During the Convenio, LGS filed a claim in the Convenio seeking to enforce the Promissory Notes, and also filed documents showing that Yanber owed it US $3,467,727.71. Pl.'s 56.1 ¶ 19; Def.'s 56.1 ¶ 10. LGS's claim was approved by the Cosa Rican Bankruptcy Court. Id. Thereafter, Yanber's creditors negotiated with Yanber and Yankelewitz in an effort to reach an agreement pursuant to which Yanber's debts would be repaid. Id. ¶ 11.
On January 29, 2016, pursuant to Costa Rican insolvency law, a meeting of Yanber's creditors was held at the Costa Rican Bankruptcy Court. Id. ¶ 12.[4] LGS attended *1317 the Yanber creditors' meeting through its Costa Rican attorneys. Id. ¶ 13. Yankelewitz appeared at the creditor's meeting as the representative of Yanber and on his own behalf as a shareholder. Def.'s 56.1 ¶ 14.[5] During the course of the creditors' meeting, Yanber, Yankelewitz, and Yanber's creditors reached an agreement (the "Precautionary Agreement"). Id. ¶ 15. The majority of Yanber's creditors provided the necessary approval for the Precautionary Agreement, which became effective on all of Yanber's creditors, and set forth a plan under which Yanber would satisfy its debts. Pl.'s 56.1 ¶ 20. Thirty-two of thirty-five creditors with voting rights that had filed claims against Yanber voted in favor of the Precautionary Agreement, including LGS. Def.'s 56.1 ¶ 21. The Costa Rican Bankruptcy Court approved the Precautionary Agreement on January 29, 2016. Id. ¶ 15.
The Precautionary Agreement contemplates the creditors effectively taking control of the company, securing any proceeds, and distributing them over time. Pl.'s 56.1 ¶ 22. Although Yankelewitz was not a debtor in the Precautionary Agreement, he agreed to transfer the shares of his 100% interest in Yanber and in another company-Fomento Agricola del Atlantico, S.A. ("Fomento")-to a trust for the benefit of Yanber's creditors, including LGS. Pl.'s 56.1 ¶¶ 21, 23; Def.'s 56.1 ¶ 16. Yankelewitz also relinquished his personal claim of $7,930,000 against Yanber and waived any and all other claims that he might have against Yanber and Fomento. Def.'s 56.1 ¶ 16.[6] Yankelewitz did not contribute cash to the trust fund. Pl.'s 56.1 ¶ 26. Finally, none of the parties filed anything in the Convenio explicitly mentioning the Guaranty. See id. ¶ 24.
LGS has not received any proceeds from the Precautionary Agreement. Id. ¶ 27. During the process of payment, creditors will have the ability to challenge or change the terms of the Precautionary Agreement. Id. Yankelewitz has not paid LGS the monies Yanber owed to Leader Global under the MSA. Id. ¶ 28.
On August 18, 2015, LGS filed its first lawsuit against Yankelewitz for breach of the Guaranty in the case styled Leader Global Solutions LLC v. Yankelewitz, No. 15-23092-CIV-SCOLA (S.D. Fla. Aug. 18, 2015) (the "First Lawsuit"). Id. ¶ 29. Within days of LGS's filing of the First Lawsuit, Yankelewitz negotiated a payment extension with LGS and made an initial $780,000 payment to LGS. Id. ¶ 30; see also Settlement Agreement, Ex. 1 to Def.'s Opp'n 56.1 (ECF No. 65-1). Upon receipt of the $780,000 payment, LGS voluntarily dismissed the First Lawsuit. Pl.'s 56.1 ¶ 31. Yankelewitz did not make any further payments to LGS. Id. ¶ 32.[7]
On July 11, 2016, LGS filed the instant lawsuit against Yankelewitz for breach of the Guaranty, contending that Yankelewitz owed LGS a total of $2,680,285.44. Id. ¶¶ 32-33. This amount included $2,467,727.71 in unpaid principal, $96,282.51 in markups and $116,275.22 in late fees. Id. ¶ 34.
On July 10, 2016, Yankelewitz moved for summary judgment on the single claim *1318 against him for breach of guaranty. See Def.'s Mot. (ECF No. 52). The next day, LGS moved for summary judgment on the same claim. See Pl.'s Mot. (ECF No. 60).
II. LEGAL STANDARD
Summary judgment is appropriate where there is "no genuine issue as to any material fact [such] that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett , 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ; see also Fed R. Civ. P. 56. An issue of fact is "material" if it is a legal element of the claim under the applicable substantive law that might affect the outcome of the case. Allen v. Tyson Foods, Inc. , 121 F.3d 642, 646 (11th Cir. 1997). An issue of fact is "genuine" if the record, taken as a whole, could lead a rational trier of fact to find for the nonmoving party. Id. "For factual issues to be considered genuine, they must have a real basis in the record." Mann v. Taser Int'l, Inc. , 588 F.3d 1291, 1303 (11th Cir. 2009) (citation omitted).
The moving party has the initial burden of showing the absence of a genuine issue as to any material fact. See Tyson Foods, Inc. , 121 F.3d at 646 (citation omitted). In deciding whether the moving party has met this burden, the court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the non-moving party. Denney v. City of Albany , 247 F.3d 1172, 1181 (11th Cir. 2001). Once the moving party satisfies its initial burden, the burden shifts to the non-moving party to come forward with evidence showing a genuine issue of material fact that precludes summary judgment. Bailey v. Allgas, Inc. , 284 F.3d 1237, 1243 (11th Cir. 2002) ; see also Fed. R. Civ. P. 56(e). Thus, the nonmoving party "may not rest upon the mere allegations or denials of his pleadings, but [instead] must set forth specific facts showing that there is a genuine issue for trial." See Anderson v. Liberty Lobby, Inc. , 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." Anderson , 477 U.S. at 252, 106 S.Ct. 2505. "Likewise, a [nonmovant] cannot defeat summary judgment by relying upon conclusory assertions." Maddox-Jones v. Bd. of Regents of Univ. of Ga. , 448 Fed.Appx. 17, 19 (11th Cir. 2011). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." Tyson Foods, Inc. , 121 F.3d at 646 (citations omitted). But if the record, taken as a whole, cannot lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial, and summary judgment is proper. Matsushita Elec. Indus. Co. v. Zenith Radio Corp. , 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).
The standard of review for cross-motions for summary judgment does not differ from the standard applied when only one party files a motion. See Am. Bankers Ins. Grp. v. United States , 408 F.3d 1328, 1331 (11th Cir. 2005). "Cross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed." United States v. Oakley , 744 F.2d 1553, 1555 (11th Cir. 1984) (internal quotation marks and citation omitted). Thus, a court must consider each motion on its own merits, resolving all reasonable inferences against the party whose motion is under consideration. See Am. Bankers Ins. Grp., 408 F.3d at 1331.
III. DISCUSSION
In this action, LGS brings a single breach of guaranty claim against Yankelewitz. Unlike the typical breach of guaranty *1319 action, however, Yankelewitz and LGS (collectively, the "Parties") agree that Yankelewitz breached the terms of the Guaranty. See Pl.'s 56.1 ¶ 28. Specifically, the Parties agree that, by executing the Guaranty, Yankelewitz undertook an obligation to pay Yanber's debt under the Promissory Notes in the event of Yanber's default. Id. ; see also id. ¶ 14; Guaranty (ECF No. 61-5) at 1-7. The Parties also agree that Yankelewitz has not fully paid LGS despite the fact that Yanber defaulted on its payment obligations.[8] Pl.'s 56.1 ¶ 28.
Despite conceding this breach, Yankelewitz argues that the Guaranty cannot be enforced against him because of his affirmative defenses.[9] See Answer (ECF No. 31) at 4-5; see also Def.'s Mot at 9. Specifically, Yankelewitz asserts the following affirmative defenses: (1) the Court "lacks subject matter jurisdiction over this action" because the claims have been resolved, or are currently being adjudicated, in the Costa Rican courts; (2) Plaintiff's claims are barred by principles of res judicata in that the Costa Rican courts have determined the amount of debt owed by Yanber to Leader Global and have relieved Yankelewitz of all liability; (3) Plaintiff waived its right to seek damages against Defendant by voting in favor of the Precautionary Agreement; (4) Plaintiff's claim is barred in whole or in part due to the usurious interest rates imposed by the MSA and the Guaranty; and (5) Defendant is entitled to a set-off of monies paid to Plaintiff in full or partial satisfaction of its claims by any and all collateral sources. See Answer at 4-5.
Yankelewitz moves for summary judgment based solely on his defenses pertaining to (1) subject matter jurisdiction, (2) res judicata, and (3) waiver. See Def.'s Mot. at 9-10. Yankelewitz also argues that summary judgment is appropriate on his subject matter jurisdiction and res judicata claims in light of the principles of comity. Id. LGS moves for summary judgment on the grounds that all of Yankelewitz's defenses fail and there is no dispute that Yankelewitz breached the Guaranty. See Pl.'s Mot. at 4-20.
Accordingly, the issue on summary judgment is whether any of Yankelewitz's affirmative defenses prevent LGS's enforcement of the Guaranty. For the reasons set forth below, the Court finds that they do not and that summary judgment in favor of LGS is warranted.
A. The Subject Matter Jurisdiction, Res Judicata, and Comity Defenses
Despite the language used in the subject matter jurisdiction defense, Yankelewitz does not argue that the Court actually "lacks" subject matter jurisdiction.[10] Rather, Yankelewitz argues that the Court should abstain from exercising jurisdiction because "all potential claims relating to the MSA and Guaranty either have been or are being resolved in the Courts of Costa Rica with the consent of Plaintiff." See Def.'s Mot. (ECF No. 52) at 9; see also id. at 13-15. Relatedly, Yankelewitz argues *1320 that the Court should defer to the Costa Rican Bankruptcy Court's judgment-which purportedly absolves Yankelewitz of his liability under the Guaranty-under principles of res judicata and comity. See id. at 9, 56-15; see also Def.'s Opp'n (ECF No. 65) at 14-17.
The Court rejects Yankelewitz's arguments for two reasons. First, the Costa Rican Bankruptcy Court explicitly declined to exercise jurisdiction over personal claims against Yankelewitz, thus there is no judgment regarding the Guaranty to defer to. Second, Yankelewitz executed a waiver of these defenses in the Guaranty. Accordingly, the affirmative defenses pertaining to subject matter jurisdiction and res judicata fail as a matter of law.
1. The Costa Rican Bankruptcy Court Did Not Adjudicate the Guaranty
Courts apply the doctrines of abstention, res judicata, and comity when another court has addressed, or is addressing, the same issues or claims that are currently before the court. Compare Cafaro v. Zois , No. 15-CIV-80150, 2015 WL 3821752, at *6 (S.D. Fla. June 2, 2015) ("To determine whether abstention is merited ..., a court must decide as a threshold matter whether there is a parallel state action-that is, 'one involving substantially the same parties and substantially the same issues .' " (internal citation omitted) (emphasis added)) with In re Piper Aircraft Corp. , 244 F.3d 1289, 1296 (11th Cir. 2001) ("In the Eleventh Circuit, a party seeking to invoke the doctrine [of res judicata] must establish its propriety by satisfying four initial elements: (1) the prior decision must have been rendered by a court of competent jurisdiction; (2) there must have been a final judgment on the merits; (3) both cases must involve the same parties or their privies; and (4) both cases must involve the same causes of action ." (emphasis added))[11] and GDG Acquisitions, LLC v. Gov't of Belize , 749 F.3d 1024, 1030 (11th Cir. 2014) (describing comity analysis as the decision to "consider whether to respect the judgment of a foreign tribunal or to defer to parallel foreign proceedings.").
Yankelewitz argues that, under those doctrines, this Court should respect the judgment of the Costa Rican Bankruptcy Court by finding Yankelewitz not liable under the Guaranty. See Def.'s Mot. at 9, 13-15 (arguing the Court should abstain from exercising jurisdiction to enforce the Guaranty in this action); id. at 15-17 (arguing that the Precautionary Agreement and Order is res judicata). In support, Yankelewitz points to the following sections of the Precautionary Agreement:
[Section 3.1] Samuel Yankelewitz assigns 100% of the shares of the Debtors as assets, acting as the sole shareholder, to the trust approved by the Creditors' Committee, freeing him of all liability, being this assignment his only obligation. With the physical delivery of the shares and the acceptance by the Committee of the asset assignment, the creditors indicated in point 2.2[.]3. would deem the claims as paid.
....
[Section 3.4.3] With the acceptance by the creditors and of course with the actual entry of the shares and the books in the trust, the credits of those whose filings are approved by the insolvency proceeding will be deemed paid.
....
[Section 3.4.4] It is clear and understood by the trustee creditors that the amounts they eventually receive depend *1321 on the sale and sale amount of the shares of the companies or their assets without any obligation to Samuel Yankelewitz to further pay or contribute.
See Precautionary Agreement (ECF No. 61-7) at 18, 20.
In a vacuum, these excerpts may suggest that Yankelewitz is discharged of any and all obligations to pay any creditor. However, in the context of the entire agreement, it is clear that these sections do not dispose of Yankelewitz's obligations under the Guaranty. First, the Precautionary Agreement, on its face, pertains to claims only against the "debtors" who "established" the "proceeding"-i.e. , Corporación Yanber S.A. and Fomento Agricola Del Atlantico S.A. See id. at 1, 6. In fact, Yankelewitz was not even a "party" to the Precautionary Agreement, as conceded by Yankelewitz's Costa Rican law expert. See Artavia Dep. Tr. (ECF No. 58-1) at 79:10-80:11, 80:20-2. Second, the Precautionary Agreement does not explicitly adjudicate-or even reference-the Guaranty. See Guaranty (ECF No. 61-7). Third, there is no evidence that the Costa Rican Bankruptcy Court reviewed-or was even aware of-the Guaranty because no parties submitted any documentation regarding the Guaranty to the Court. See Bauer Deck (ECF No. 61-1) ¶ 16; Artavia Dep. Tr. 53:17-24.
Finally, the Costa Rican Bankruptcy Court explicitly states that that the enforcement of personal claims against Yankelewitz are reserved for separate pursuit in other courts. Specifically, the Precautionary Agreement states that:
The personal collection of claims against Samuel Yankelewitz Berger is rejected since this person is not insolvent in this matter and it is not conducive to include him as part of an alleged economic interest group through the filing of claims. If such declaration is of interest, resort to the corresponding declarative courts.
Precautionary Agreement Part II ¶ 3 (bolded emphasis added)). The provision makes clear that, to the extent the creditors have personal claims against Yankelewitz-such as LGS's claim arising out of the Guaranty-those claims may be pursued elsewhere. See Garita Op'n (ECF No. 61-11) at 7 (opining that this language shows that "the Precautionary Agreement expressly rejected and denied the inclusion of Yankelewitz ....") This interpretation is not inconsistent with the three provisions cited by Yankelewitz, which all dealt with Yankelewitz's obligations to creditors as sole shareholder and president of Yanber-not in his role as guarantor. This interpretation thus harmonizes the carve-out provision with the three provisions cited by Yankelewitz. See PNC Bank, N.A. v. Progressive Employer Servs. II , 55 So.3d 655, 658 (Fla. 4th DCA 2011) ("[A]n interpretation which gives a reasonable meaning to all provisions of a contract is preferred to one which leaves a part useless or inexplicable." (citation omitted)).
Accordingly, the Costa Rican Bankruptcy Order simply does not address Yankelewitz's personal liability-including under the Guaranty-which is the only issue before this Court. Because the Costa Rican Bankruptcy Court did not adjudicate liability under the Guaranty, there is no judgment or proceeding for this Court to defer to.[12]
*1322 2. Yankelewitz Waived These Affirmative Defenses
In executing the Guaranty, Yankelewitz consented to an extensive set of waiver provisions. In relevant part, the Guaranty provides that the "Guarantor hereby waives ... any defense based on any event or circumstances described in Section 1(b)." See Guaranty (ECF No. 61-5) § 3. Section 1(b) states the following:
Guarantor guarantees that the Guaranteed Obligations will be paid strictly in accordance with the terms of the Sales Agreement, or as applicable, the Local Agreement regardless of any law, regulation or order now or hereafter in effect in any jurisdiction affecting any such terms or the rights of the Guaranteed Party with respect thereto. The obligations of Guarantor under this guaranty shall be primary obligations , and the liability of Guarantor under this Guaranty shall be absolute and unconditional irrespective of: .... (iii) any present or future action of any governmental authority amending, varying reducing, or otherwise affecting, or purporting to amend, vary, reduce or otherwise affect, any of the Guaranteed Obligations or this Guaranty; ... (vi) any release or discharge by operation of law of the Contract Party, Guarantor or any other guarantor of the Guaranteed Obligations from any obligation or agreement contained in the Sales Agreement or in the Local Agreement....
Guaranty (ECF No. 61-5) § (1)(b). The Guaranty further provides:
The Guarantor further acknowledges and agrees that the Guaranteed Obligations will survive any bankruptcy , merger, or dissolution of any of the Contract Part[ies] , including without limitation: (i) the commencement of any proceeding for voluntary bankruptcy by the Contract Party; (ii) any assignment for the benefits of creditors by the Contract Party; (iii) the entry of a decree or order for relief by a court having jurisdiction in the premises in respect of the Contract Party in an involuntary case under any applicable law; or (iv) the dissolution or winding down of any of the Contract Party.
Guaranty § (1)(c).
Based on these waiver provisions, the Court finds that Yankelewitz waived his right to assert abstention or res judicata affirmative defenses because such defenses are impermissibly based on a bankruptcy proceeding (in violation of section 1(c) of the Guaranty) and on a court order (in violation of section 1(b) of the Guaranty).
The Court also rejects Yankelewitz's argument that "[i]f Yanber's debts have been paid in full, Yankelewitz's guaranty is discharged," Def.'s Mot. 16-17, for the same reasons. Even if Article 943 of the Costa Rican Commercial Code typically has the effect of releasing a guarantor when the debt underlying the guaranty is discharged, Yankelewitz waived his right to assert a defense based on "any release or discharge by operation of law." See Guaranty § 1(b)(vi). Moreover, the Guaranty preserves Yankelewitz's liability under the Guaranty despite "any present or future action of any governmental authority *1323 amending, varying, reducing or otherwise affecting ... any of the Guaranteed Obligations or this Guaranty." Id. § 1(b)(iii). Finally, the Guaranty explicitly states that it will "survive any bankruptcy" including an "order for relief" of any "Contract Party."[13] See Guaranty § (1)(c).
In Florida, "a contract must be applied as written, absent an ambiguity or some illegality." Wells Fargo Bank, N.A. v. Osprey Commerce Ctr., LLC , No. 8:13-cv-1738-T-27MAP, 2014 WL 1271460, at *4 (M.D. Fla. Mar. 26, 2014) ; see id. at *5 (holding that affirmative defenses were insufficient as a matter of law based on defendants' voluntary and intentional waiver).
The Court finds no reason to invalidate these waiver provisions here. A guarantor may execute broad waivers of defenses which otherwise would protect a guarantor by operation of law. See, e.g. , ND Properties v. BLRG Rest. Grp., Inc. , 649 Fed.Appx. 861, 865 (11th Cir. 2016) (upholding broad waiver clause in guaranty); Rigneck, Inc. v. Buck , No. 3:08-cv-261-J-32JRK, 2010 WL 745725, at *4 (M.D. Fla. Feb. 26, 2010) (finding waiver in a guaranty "precluded [Defendant] from asserting any affirmative defenses other than payment."). Additionally, defenses based on the effects of prior proceedings are waivable. See JP Morgan Chase Manhattan Bank v. Winget , No. 16-2130, 704 Fed.Appx. 410, 419, 2017 WL 3098183, at *7 (6th Cir. July 21, 2017) ("[E]ven if res judicata applied, the district court properly determined that Winget and the Trust contractually waived any res judicata defense in the Guaranty, and they are bound by that waiver."); IndyMac Bank, F.S.B. v. Aryana/Olive Grove Land Dev. LLC , 636 Fed.Appx. 704, 706 (9th Cir. 2016) (upholding section of guaranty agreement that explicitly "waives any defense to the enforcement of this Guaranty ... arising by reason of ... any discharge or release of any other Loan Party").
B. The Waiver Defense
Yankelewitz also argues that LGS "waived" its right to enforce the Guaranty because it agreed to the Precautionary Agreement, in which it "voluntarily and knowingly relinquished any claims" against Yankelewitz. See Answer at 4-5; see also Def.'s Mot. at 17-19.
This argument fails. Section 9(e) of the Guaranty provides that "[n]o amendment or waiver of any provision of this Guaranty, nor consent to any departure by the Guarantor therefrom, shall be effective or binding upon the Guaranteed Party unless the Guaranteed Party shall first have given written consent thereto." See Guaranty § 9(e). Such anti-waiver provisions are enforceable under Florida law.[14] See Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Sen's., Inc. , 601 F.3d 1159, 1182-83 (11th Cir. 2010) ("Florida courts have consistently enforced [anti-waiver] clauses ...." (modification in original)). Yankelewitz argues that by signing the Precautionary Agreement, LGS provided "written consent" to depart from the Guaranty. However, as discussed above, the Precautionary Agreement does not address Yankelewitz's liability under the Guaranty. Therefore, the Precautionary Agreement does not contain an intentional relinquishment of LGS's right to enforce the Guaranty. See DK Arena, Inc. v. EB Acquisitions 1, LLC , 112 So.3d 85, 97 (Fla. 2013) (defining waiver as the "intentional relinquishment, express or implied of a known right."). Accordingly, LGS did not waive its right to enforce the Guaranty.
*1324 C. The Usury Defense
Yankelewitz also asserts that LGS's "claim is barred in whole or part due to the usurious interest rates" imposed by the MSA and Guaranty and therefore, "Yankelewitz is entitled to a set off or recoupment therefor." See Answer at 4. Yankelewitz argues that the Promissory Notes created pursuant to the MSA carry an usurious interest rate. See Def.'s Opp'n (ECF No. 65) at 18-19.
Like other affirmative defenses, a usury defense can be waived. See In re Holywell Corp. , 49 B.R. 694, 696-97 (S.D. Fla. Bankr. 1985) ("This Court has followed the general rule that usury is purely a personal defense created by statute for the protection of borrowers and, therefore, any borrower may waive his right to claim the benefit of such statute."). By executing the Guaranty, Yankelewitz waived any defenses "concerning the validity or enforceability of the [MSA or Promissory Notes] ...." Guaranty § 3(a). Similarly, Yankelewitz acknowledged that his obligations under the Guaranty are "absolute and unconditional irrespective of ... any lack of validity or enforceability of any payment provisions of the [MSA, the Note] or any documents relating thereto." Id. § 1(b). Accordingly, this affirmative defense fails as a matter of law.
D. The Set-Off Defense
Yankelewitz also asserts that he is "entitled to a set-off of all sums of monies paid or payable to the Plaintiff in full or partial satisfaction of its claims by any and all collateral sources." See Answer at 4. However, Yankelewitz does not pursue this defense in his Motion for Summary Judgment. See Def.'s Mot. at 9. LGS does not address this defense except by arguing that all of Yankelewitz's affirmative defenses are waived. See Pl.'s Mot. at 4-6.
A setoff is defined as "[a] debtor's right to reduce the amount of a debt by any sum the creditor owes the debtor." In re TSLC I, Inc. , 332 B.R. 476, 478 (Bankr. M.D. Fla. 2005) (citing Black's Law Dictionary 1376 (7th ed. West Group 1999)). It "allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding 'the absurdity of making A pay B when B owes A.' " Id. (quoting Citizens Bank of Maryland v. Strumpf , 516 U.S. 16, 18, 116 S.Ct. 286, 133 L.Ed.2d 258 (1995) )).
In executing the Guaranty, Yankelewitz waived "any set-off or counterclaim," see Guaranty § (3)(e), and any defenses based on "the existence of any claim, counterclaim, set-off or other right that Guarantor may at any time have against [Yanber] or any other person (other than Guarantor), whether or not arising in connection with this Guaranty, the [MSA or the Promissory Notes]," see id. (1)(b)(vii). Accordingly, Yankelewitz has waived the set-off affirmative defense,[15] and thus this defense will not defeat LGS's claim for breach of the Guaranty.
IV. CONCLUSION
For the foregoing reasons, it is ORDERED AND ADJUDGED as follows:
1. Plaintiff's Motion for Summary Judgment (ECF No. 60) is GRANTED.
2. Defendants' Motion for Summary Judgment (ECF No. 52) is DENIED.
*1325 3. The Clerk of Court is instructed to administratively close this case.
4. Within fourteen (14) days of the date of this Order, Plaintiff is instructed to calculate its damages as of the date of this Order. Within fourteen (14) days of Plaintiff's submission, Defendant may submit objections to Plaintiff's calculations.
DONE and ORDERED at Miami, Florida, this 24th day of October, 2017.

Defendant filed a Memorandum in Opposition to Plaintiff's Motion for Summary Judgment ("Def.'s Opp'n") (ECF No. 65) and Plaintiff filed a Reply in Support ("Pl.'s Reply") (ECF No. 70).
Plaintiff filed a Response to Yankelewitz's Motion for Final Summary Judgment ("Pl.'s Opp'n") (ECF No. 63) and Defendant filed a Reply in Support ("Def.'s Reply") (ECF No. 69). Plaintiff subsequently filed a Notice of Supplemental Authority (ECF No. 98), which this Court has reviewed.

Yankelewitz resides in San Jose, Costa Rica and is neither a lawful permanent resident of the United States nor domiciled in Florida or the United States. Def.'s 56.1 ¶ 1.

The typographical error consisted of one reference in Recital A intended to be "to the Guaranteed Party," which incorrectly stated "to the Guarantor." Pl.'s 56.1 ¶ 15.

Although Defendant's 56.1 Statement indicates that the date of this meeting is January 29, 2015, the source to which it cites indicates that the correct date is January 29, 2016. See Precautionary Agreement, Ex. F to Pl.'s 56.1 (ECF No. 61-7) at 2.

Plaintiff does not dispute this point, but asserts that Yankelewitz was not a party to the Convenio. See Pl.'s Opp'n 56.1 ¶ 14.

Plaintiff does not contest that Yankelewitz relinquished his claim but asserts "[n]othing in the [Convenio] Agreement states that Yankelewitz's relinquishment of a personal claim of $7,930,000 against the two insolvent companies formed part of the consideration or was anything more than voluntary." Pl.'s Opp'n 56.1 ¶ 16

As of October 20, 2017, neither Yanber nor Yankelewitz has made any subsequent payments to LGS. See Final Pretrial Stipulation (ECF No. 97) at 8.

Yankelewitz has partially performed, paying LGS $780,000 under the Guaranty. See Pl.'s 56.1 ¶¶ 10-11.

Yankelewitz has withdrawn his first and fourth affirmative defenses, both of which asserted that the Guaranty lacked consideration and thus was unenforceable against Yankelewitz. See Def.'s Opp'n (ECF No. 65) at 18 n.5.

In fact, the Parties agree that "jurisdiction exists pursuant to 28 U.S.C. § 1332 because Leader Global and Yankelewitz are citizens of different states, domestic and foreign, and the amount in controversy exceeds $75,000, exclusive of interest and costs."See Joint Final Pretrial Stipulation (ECF No. 97) at 6.

The Court notes that, according to the Parties' experts, Costa Rican law features a similar test for res judicata with three elements: (i) identity of cause of action, (ii) identity of petitions or counts and (iii) identity of parties. See Garita Op'n at 6-7; Artavia Dep. 72:10-12.

Yankelewitz also argues that Article 943 of the Costa Rican Commercial Code operates to "benefit" guarantors such as Yankelewitz. See, e.g. , Def.'s Mot. at 8. While this Article appears to concern the effect of an agreement in the bankruptcy context, see Artavia Op'n (ECF No. 61-10) at 9, the Bankruptcy Court explicitly stated that personal claims against Yankelewitz were not adjudicated by the Order and could be brought separately. See Precautionary Agreement Part II ¶ 3. Accordingly, this Court rejects Yankelewitz's invitation to disturb the express decision of the Costa Rican Bankruptcy Court to limit the claims before it to exclude the personal liability of Yankelewitz. See generally Shaw v. Goebel Brewing Co. , 202 F. 408, 412 (6th Cir. 1913) (noting that the court was "constrained" in its interpretation of a British law by the decisions of Great Britain's courts). In any case, a defense premised on the operation of this law was waived by Yankelewitz when he signed the Guaranty. See Guaranty § 1(b)(vi); see also Section III.A.2, infra .

The Guaranty defines "Contract Party" as Yanbar. See Guaranty § A, Schedule 1.

The Guaranty specifies that Florida law applies. See Guaranty § (9)(i).

For the purposes of clarity, the Court notes that payments made "strictly in accordance with the terms" MSA and Promissory Notes are not waived because such payments constitute performance. See Guaranty § 1(b). The Court notes that Yankelewitz has partially performed under the Guaranty by paying LGS $780,000. See Pl.'s 56.1 ¶¶ 10-11. Accordingly, LGS is correct to have reduced the amount it seeks by $780,000, notwithstanding any waiver. See, e.g. , Araya Deck (ECF No. 70-1) ¶¶ 6-8.